[No. B109104. Second Dist., Div. Two. Feb. 13, 1998.]

PAUL D. MABIE as Trustee, etc., Plaintiff and Appellant, v.
KATHY HYATT et al., Defendants and Respondents.

**COUNSEL**

Robinson & Wisbaum and Michael W. Robinson for Plaintiff and Appellant.

Reback, Hulbert, McAndrews & Kjar and John M. Caron for Defendants and Respondents.

## Opinion

**ZEBROWSKI, J.**—This case concerns what ought to be a well-settled question: A plaintiff files a complaint containing two claims. The first claim is supported by probable cause. The second claim is not supported by probable cause. Instead, it is motivated by malice. The defendant successfully defends both claims. May the defendant now sue for malicious prosecution of the unsupported and malicious claim? The California Supreme Court has ruled four times that the answer is yes.

The action underlying the instant malicious prosecution action contained essentially two claims. The first claim sought cancellation of a note and deed of trust. This claim was arguable both as to the facts and the law, and hence was supported by probable cause. The second claim accused defendants of fraud, conspiracy and malice, and sought punitive damages. This second claim had no evidentiary support whatever. The party who filed these claims, as well as her attorneys, admitted never having any evidence to support these claims. Nevertheless, as defendants in this malicious prosecution action, they moved for summary judgment, claiming that they had probable cause for the entire action. Both the moving and opposing summary judgment papers were not as well focused on the ultimate issue as might be optimum. Perhaps for that reason the trial court granted summary judgment, and awarded costs as well. The record, however, is rather uniquely clear that there was no probable cause for the fraud, conspiracy, malice and punitive damage claim. Since the controlling Supreme Court authority requires probable cause for *each* claim advanced, we must reverse and remand for trial.

## I. FACTUAL BACKGROUND

### a. *The loan by Mrs. Mabie and Dr. Mabie, the loan payoff, the filing of this suit.*

The plaintiffs and appellants in this action are Helen Mabie and her son, Paul D. Mabie, as trustee for the Paul D. Mabie, M.D., Inc., Pension & Profit Sharing Trust. The defendants and respondents are Kathy Hyatt and her former attorneys.[1] In 1990, Mrs. Mabie and Dr. Mabie made a loan to Mrs. Hyatt's then husband. The loan was made through a loan broker; there was no direct contact between Mrs. Mabie and Dr. Mabie and the borrower, Mr. Hyatt. At the time of the loan, Mr. and Mrs. Hyatt owned a condominium. They held title as joint tenants, but the condominium was community property. The loan to Mr. Hyatt was secured by a deed of trust against the ·condominium. The deed of trust was clearly worded to encumber the interest of Mr. Hyatt only. As of 1990, case law permitted one spouse to encumber

---

[1]Not the same attorneys who now represent her on this appeal.

his or her interest in community real property without the consent of the other spouse. (*Mitchell* v. *American Reserve Ins. Co.* (1980) 110 Cal.App.3d 220 [167 Cal.Rptr. 760]; *Kane* v. *Huntley Financial* (1983) 146 Cal.App.3d 1092 [194 Cal.Rptr. 880]; *Head* v. *Crawford* (1984) 156 Cal.App.3d 11 [202 Cal.Rptr. 534]; but see also *Andrade Development Co.* v. *Martin* (1982) 138 Cal.App.3d 330 [187 Cal.Rptr. 863] [husband's signature alone not sufficient to form enforceable contract to sell community real property].) Later, the Supreme Court decided *Droeger* v. *Friedman, Sloan & Ross* (1991) 54 Cal.3d 26 [283 Cal.Rptr. 584, 812 P.2d 931], holding that an encumbrance placed on community real property by only one spouse was voidable. This change in the law is heavily relied upon by defendants.

In 1991, the condominium was sold. The loan was repaid out of Mr. Hyatt's share of the escrow proceeds, and the deed of trust in favor of Mrs. Mabie and Dr. Mabie was reconveyed. However, even as these events occurred, and apparently unknown to Mrs. Mabie and Dr. Mabie, they were being sued. Mrs. Hyatt's lawsuit was filed in 1990. However, it was not served until about 15 months later. Mrs. Hyatt's attorneys delayed service because they feared that the existing law regarding the validity of encumbrances created by only one spouse would render their complaint vulnerable to a demurrer. Even though they considered their complaint potentially vulnerable to demurrer (i.e., believed that the Mabies' deed of trust might be valid), they nevertheless filed suit against Mrs. Mabie and Dr. Mabie for fraud, conspiracy, malice and punitive damages.[2] The complaint was finally served after the Supreme Court decided *Droeger*. In the interim, the condominium sale, loan payoff, and deed of trust reconveyance noted above took place.

b. *The underlying lawsuit.*

Mrs. Hyatt's lawsuit contained essentially two claims.[3] The first was for cancellation of the note and the deed of trust against the condominium. This claim was technically rendered moot by the sale of the condominium, the repayment of the note, and the reconveyance of the deed of trust. This claim should have been supplemented and amended to seek reimbursement of the amounts paid to retire the note and to obtain the reconveyance. Nevertheless,

---

[2]The brief filed jointly on behalf of Mrs. Hyatt and her former attorneys states that the attorneys "believed that if the Complaint was served before the Supreme Court's decision in Droeger, there was a risk that all defendants could successfully demur to the cause of action premised upon Civil Code § 5127 on the basis of the Mitchell line of cases." Mrs. Hyatt's attorneys testified to the same effect in their depositions.

[3]It was pleaded in three counts. The first count concerned the deed cancellation. The second pleaded fraud. The third pleaded conspiracy to defraud. We treat the second and third counts together, since the claim is that Mrs. Mabie and Dr. Mabie unlawfully colluded with Mr. Hyatt to defraud Mrs. Hyatt.

Mrs. Hyatt prosecuted it to conclusion without supplement or amendment, and the trial and appellate courts treated it as a reimbursement claim. The second claim alleged that in making the loan Mrs. Mabie and Dr. Mabie had acted with "actual intent to defraud [Mrs. Hyatt] of her interest and the community of its interest" in the condominium, and that Mrs. Mabie and Dr. Mabie had "agreed and knowingly conspired . . . to defraud [Mrs. Hyatt] of her interest and the community's interest" in the condominium. Mrs. Hyatt further alleged that Mrs. Mabie and Dr. Mabie had acted "intentionally, willfully, fraudulently and maliciously," and "with specific intent to defraud and oppress" Mrs. Hyatt. Mrs. Hyatt's complaint prayed for cancellation of the note and deed of trust, compensatory damages, punitive and exemplary damages, costs and other relief.

The record reflects that Mr. and Mrs. Hyatt and Mrs. Hyatt's attorneys were Los Angeles residents at the relevant times. Mrs. Hyatt's suit against Mrs. Mabie and Dr. Mabie was originally filed in Los Angeles, but subsequently was transferred to Sacramento. The record does not reflect the reasons for the transfer, but presumably it was because either Mrs. Mabie or Dr. Mabie, or both, resided in Sacramento, and neither resided in Los Angeles. The case went to trial in Sacramento, and resulted in a defense verdict. Mrs. Hyatt then appealed the entire judgment.[4] Her appeal resulted in the reported case entitled *Hyatt* v. *Mabie* (1994) 24 Cal.App.4th 541 [29 Cal.Rptr.2d 447]. After ruling that Mrs. Hyatt had waived any right she may have had to cancel the note and deed of trust on a *Droeger* theory by authorizing the escrow payoff, the *Hyatt* court rejected Mrs. Hyatt's characterization of the conduct of Mrs. Mabie and Dr. Mabie as "unlawful," stating "[t]here is no evidence defendants [Mrs. Mabie and Dr. Mabie] did anything unlawful. Plaintiff produced no evidence of fraud, conspiracy, or bad faith on the part of defendants and she conceded at trial that she had none. In the absence of any such evidence, plaintiff has no legitimate basis for characterizing defendant's actions as unlawful." (*Hyatt* v. *Mabie, supra,* 24 Cal.App.4th at pp. 547-548.) The court concluded by stating that Mrs. Hyatt "has utterly failed to prove any wrongdoing." (*Id.* at p. 548.) Mrs. Hyatt petitioned the Supreme Court for review, but her petition was denied.

---

[4] Judgment was entered against Mrs. Hyatt in the Sacramento trial court on her fraud, conspiracy, malice and punitive damage claims as well as on her claim for cancellation of the deed of trust. Her notice of appeal appealed from the entire judgment. Her brief on appeal, however, dealt only with the cancellation (or reimbursement) issue, on which she had lost on grounds of waiver. Whether the fraud, etc., claims would have been resurrected if Mrs. Hyatt had been successful in obtaining a reversal of the waiver finding is unclear. Mrs. Hyatt and her attorneys could have made it clear by dismissing the other claims, or could have appealed only on the cancellation issue, but did not. The Court of Appeal opinion in the Sacramento case treated her entire case as on appeal. Thus whether Mrs. Mabie and Dr. Mabie remained exposed to the fraud, etc. claims remained unclear because of how Mrs. Hyatt's attorneys handled the case.

c. *The instant lawsuit and the summary judgment.*

In June of 1995, Mrs. Mabie and Dr. Mabie filed the instant action against Mrs. Hyatt and her attorneys for malicious prosecution. Mrs. Mabie died in December of 1995. Her son was then appointed personal representative and continues to prosecute this action on his own behalf and on behalf of Mrs. Mabie's estate.

Mrs. Hyatt and her attorneys moved for summary judgment on the grounds that they had probable cause to prosecute all aspects of the Sacramento litigation. Their moving papers, and particularly the separate statement of undisputed facts, are quite curious. They are almost entirely directed to chronicling the marital conflicts between Mr. and Mrs. Hyatt, Mr. Hyatt's bad character, and Mr. Hyatt's bad conduct. This evidence, of course, has no relevance to the question of whether *Mrs. Mabie and Dr. Mabie* had done anything wrong. As to Mrs. Mabie and Dr. Mabie, no relevant evidence of any kind was presented. No evidence was presented to link Mrs. Mabie or Dr. Mabie to the marital conflicts or to Mr. Hyatt. No evidence was presented that Mrs. Mabie or Dr. Mabie knew or had ever met Mr. Hyatt, or had ever communicated with him, or even knew that Mr. and Mrs. Hyatt were involved in a dissolution action.

Dr. Mabie, while not conceding probable cause for the first cause of action concerning the validity of the deed of trust, opposed summary judgment primarily on the grounds that there was no probable cause for the fraud, conspiracy, malice and punitive damage allegations. The rather extensive record contains these remarkable points:

(1) After the close of evidence at the Sacramento trial, one of Mrs. Hyatt's attorneys stated on the record: "At the time we filed the complaint, we did not—we—it was under information and belief that [*sic*] *we have no evidence to sustain that it was done by conspiracy or fraud.*" (Italics added.) It was this statement that the Third District referenced in *Hyatt* v. *Mabie, supra*, 24 Cal.App.4th 541, when it noted that Mrs. Hyatt had "produced no evidence of fraud, conspiracy, or bad faith on the part of [Mrs. Mabie and Dr. Mabie] and she conceded at trial that she had none."

(2) In the pretrial phase of the underlying Sacramento litigation, Mrs. Hyatt responded to requests for admission admitting that she "is possessed of no evidence in support of the factual proposition that Ms. Mabie has ever spoken with Mr. Hyatt." She further admitted that she had no evidence that Dr. Mabie had ever spoken with Mr. Hyatt, and that she had no evidence that either Mrs. Mabie or Dr. Mabie had ever corresponded with Mr. Hyatt.

(3) In her deposition in the underlying Sacramento litigation, Mrs. Hyatt testified that she had "no idea" whether Mrs. Mabie or Dr. Mabie entered

into a conspiracy with Mr. Hyatt to harm her. She also testified that she had "no idea" whether there had been any contact between Mr. Hyatt and Mrs. Mabie and Dr. Mabie. When asked if she thought that there had been a conspiracy against her, Mrs. Hyatt testified "I have no idea anything about it."

(4) In the instant action, Mrs. Hyatt responded to requests for admission admitting that at no time during the underlying Sacramento litigation did she become aware of any evidence in support of the fraud and conspiracy allegations in her complaint.

(5) In the instant action, Mrs. Hyatt cross-complained against her former attorneys. In her cross-complaint, Mrs. Hyatt alleges that her attorneys filed the underlying Sacramento action even though "[t]here was, however, no evidence in support of the allegations of fraud and conspiracy. To the contrary, evidence indicated that the Mabies had never met or spoken with Hyatt, and the loan was brokered through a third party, neutral to the interests of either Hyatt or the Mabies." (Italics in original.) Mrs. Hyatt alleged that her attorneys prosecuted the fraud, conspiracy and punitive damage claims even though she "had stated her desire to cut her losses and end the litigation."

(6) In her deposition in the instant action, Mrs. Hyatt testified that at no time has she been possessed of facts or information from any source that would cause her to believe that Mrs. Mabie or Dr. Mabie had done anything fraudulent to her. She further testified that at no time during the course of the Sacramento lawsuit did she discuss with her attorneys what evidence they had of their accusations against Mrs. Mabie and Dr. Mabie. She testified that she had never met Mrs. Mabie or Dr. Mabie, and that she never thought that either of them were involved in a scheme to get her money.

(7) The Court of Appeal in the Sacramento case, *Hyatt v. Mabie, supra*, 24 Cal.App.4th 541, after specifically stating that Mrs. Hyatt had failed to present any evidence of fraud or conspiracy on the part of Mrs. Mabie or Dr. Mabie, stated that Mrs. Hyatt had "no legitimate basis for characterizing defendant's [Mrs. Mabie and Dr.Mabie] actions as unlawful." The court concluded on the basis of the record before it that Mrs. Hyatt had "utterly failed to prove any wrongdoing." This decision is now final.

(8) When the first of Mrs. Hyatt's attorneys was deposed in this action, she cited as the probable cause for the fraud and conspiracy accusations against Mrs. Mabie and Dr. Mabie (a) the "circumstances of the *divorce case*" (italics added), (b) *Mr. Hyatt's* prior bad conduct toward *Mrs. Hyatt*, (c) the fact that the deed of trust had been recorded against only Mr. Hyatt's

interest, and (d) that the deed of trust had been recorded only shortly before the dissolution trial.[5] She had no information of any kind about Mrs. Mabie or Dr. Mabie. She had no information about what Mrs. Mabie or Dr.Mabie might have known or have done.[6] Nevertheless, despite this complete absence of relevant factual information about Mrs. Mabie and Dr. Mabie, she chose to file and prosecute to conclusion a claim for fraud, conspiracy, malice and punitive damages. She testified that "it would have been malpractice not to have" sued Mrs. Mabie and Dr. Mabie for fraud and that "The complaint is based on information and belief, counsel. There's no other attorney in the state that could have come to another conclusion and not filed that complaint. And in fact, had we not filed it in that way, we would have been liable for malpractice." Mrs. Hyatt's second attorney, at her deposition, largely adopted the first attorney's answers or else testified that she could not remember.

Summary judgment was nevertheless granted in favor of Mrs. Hyatt and her attorneys on the theory that they had probable cause to file and prosecute the underlying action, primarily because of the *Droeger* issue and the evidence of *Mr. Hyatt's* poor character and bad conduct toward *Mrs. Hyatt.*

II. DISCUSSION.

 a. *The malicious prosecution of the fraud, conspiracy, malice and punitive damage claims is actionable even if probable cause was present to contest the validity of the deed of trust.*

(1) *The Singleton case.*

*Singleton* v. *Perry* (1955) 45 Cal.2d 489 [289 P.2d 794], involved an unmarried man and woman cohabiting in San Francisco. The couple quarreled, and the woman took a Cadillac and other property and left for Cleveland. The man filed two criminal charges against the woman. The first

---

[5]The condominium could presumably have been protected against Mr. Hyatt's depredations by the recordation of a lis pendens. (See, e.g., *Kane* v. *Huntley Financial, supra,* 146 Cal.App.3d 1092.) Obviously, this was not done. At present the ruling in *Droeger* would automatically preclude one spouse from validly encumbering such a condominium without the involvement of the other, but a similar effect could likely have been achieved before *Droeger* by a lis pendens.

[6]In her deposition, the attorney later cited as another cause for her speculation that Mrs. Mabie and Dr. Mabie were involved in a fraudulent conspiracy with Mr. Hyatt the fact that Mr. Hyatt had previously been rejected for a loan by conventional lenders. However, a common reason for obtaining a loan from a nonconventional source is that conventional lenders will not make the loan. The attorney was apparently unfamiliar with the nonconventional loan practices and, rather than following the responsible course of investigating, chose instead to accuse wholly innocent parties of fraud, conspiracy and malice without any supporting evidence.

was that she had stolen the Cadillac; the second was that she had stolen a ring, luggage and other personal property. Both criminal charges terminated in favor of the woman. She then sued the man for malicious prosecution. The jury found that the man had maliciously prosecuted the charge about the Cadillac, but found in his favor with regard to the charge of stealing the ring, luggage, etc. The Supreme Court affirmed the judgment against the man on the Cadillac theft issue, quoting at length from an 1885 Missouri case, *Boogher* v. *Bryant* (1885) 86 Mo. 42, 49, 50:

" 'The authorities show . . . that, in order to maintain an action like this [malicious prosecution], "it is not necessary that the whole proceeding be utterly groundless, for, if groundless charges are maliciously and without probable cause, coupled with others which are well founded, they are not on that account the less injurious, and, therefore, constitute a valid cause of action." [Citations.]

" ' . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

" '[I]t is manifest that whatever difficulty, or impossibility even, there may be, in discriminating between the injuries, resulting from the good and bad counts, thus improperly blended, is chargeable to the wrongful act of the defendants themselves, and, upon principle, it would seem that they should not now be permitted to plead their own wrong in their own justification. If, by their wrongful acts, the plaintiff could not readily apportion his expenses, or dissect his trouble, care, anguish and vexation, and apportion them among the five counts in the information, it would seem cruel to hold that no basis could, therefore, be afforded by which to adjust the damages to the injuries sustained.

" 'Indeed, it would seem almost a mockery to hold that, by uniting groundless accusations with those for which probable cause might exist, the defendants could thereby escape liability, because of the injured party's inability to divide his damages between the two with delicate nicety. Such, we think, is not the law.' " (*Singleton* v. *Perry, supra,* 45 Cal.2d 489, 497, quoting *Boogher.*)

The *Singleton* court went on to state: "We agree with the foregoing reasoning, and conclude that plaintiff, having shown that defendant maliciously joined an unjustified charge with a justified charge, does not have the further burden of showing that her damage was specifically attributable to the malicious prosecution as opposed to the prosecution which the jury found was not malicious." (*Singleton* v. *Perry, supra,* 45 Cal.2d 489, 498.) Thus the proposition was established in California that coupling a justified charge with an unjustified charge does not shield a party from a malicious prosecution claim on the unjustified charge.

### (2) *The Albertson case.*

In the case underlying *Albertson* v. *Raboff* (1956) 46 Cal.2d 375 [295 P.2d 405], plaintiff had sued the defendant on two claims. The first was a claim for money. The second was a claim for a lien against defendant's real property on a theory of fraudulent conveyance. Plaintiff won a money judgment, but lost on the fraudulent conveyance claim. Defendant then sued plaintiff for malicious prosecution of the fraudulent conveyance claim. The trial court dismissed the malicious prosecution action for failure to state a claim. The Supreme Court reversed, stating: "In *Singleton* v. *Perry*, 45 Cal.2d 489, 497 . . . , we held that a defendant cannot escape liability for the malicious prosecution of an unjustified charge by joining with it a justified charge, and that in such a case, the plaintiff does not have the burden of 'showing that her damage was specifically attributable to the malicious prosecution as opposed to the prosecution which . . . was not malicious.' " (*Albertson* v. *Raboff, supra,* 46 Cal.2d at p. 385.) *Albertson* thus made clear that the rule announced in *Singleton* also applies to malicious prosecution of civil cases.

### (3) *The Bertero case.*

*Bertero* v. *National General Corp.* (1974) 13 Cal.3d 43 [118 Cal.Rptr. 184, 529 P.2d 608, 65 A.L.R.3d 878], involved a claim of malicious prosecution of a cross-complaint. At trial, the jury was instructed: "In this connection you are instructed that a defendant in a malicious prosecution action cannot escape liability for the malicious prosecution of a claim for which he did not have probable cause by joining it with a claim for which he did have probable cause to assert." (*Id.* at p. 55, fn. 4.) The Supreme Court ruled that this correctly stated the law, and discussed the reason at length: "The malicious commencement of a civil proceeding is actionable because it harms the individual against whom the claim is made, and also because it threatens the efficient administration of justice. The individual is harmed because he is compelled to defend against a fabricated claim which not only subjects him to the panoply of psychological pressures most civil defendants suffer, but also to the additional stress of attempting to resist a suit commenced out of spite or ill will, often magnified by slanderous allegations in the pleadings. In recognition of the wrong done the victim of such a tort, settled law permits him to recover the cost of defending the prior action including reasonable attorney's fees (*Stevens* v. *Chisholm* (1919) 179 Cal. 557, 564 [178 P. 128]; *Eastin* v. *Bank of Stockton* (1884) 66 Cal. 123, 125-126 [4 P. 1106]), compensation for injury to his reputation or impairment of his social and business standing in the community (*Ray Wong* v. *Earle C. Anthony, Inc.* (1926) 199 Cal. 15, 18 [247 P. 894]; *Lerner* v.

*Glickfeld* (1960) 187 Cal.App.2d 514, 526 [9 Cal.Rptr. 686]), and for mental or emotional distress (*Singleton* v. *Perry* (1955) 45 Cal.2d 489, 495 [289 P.2d 794].)

"The judicial process is adversely affected by a maliciously prosecuted cause not only by the clogging of already crowded dockets, but by the unscrupulous use of the courts by individuals '. . . as instruments with which to maliciously injure their fellow men.' (*Teesdale* v. *Liebschwager et al.* (1919) 42 S.D. 323, 325 [174 N.W. 620, 621].)" (*Bertero* v. *National General Corp., supra,* 13 Cal.3d 43, 50-51, fn. omitted.)

The Supreme Court went on to dismiss a contention similar to that advanced by Mrs. Hyatt's attorneys in the underlying case (that they were compelled to file their meritless claims in order to avoid malpractice), stating: "The contention that defendants were compelled to assert their cause of action under threat of being deemed to have waived it is not responsive to the issue. A litigant is never compelled to file a malicious and fabricated action. It is not the assertion of a claim that is actionable but rather the malicious character of the assertion." (*Bertero* v. *National General Corp., supra,* 13 Cal.3d 43, 52.)

Further discussing the issue of whether a suit for malicious prosecution will lie when only some, but not all, of the claims are maliciously prosecuted, the *Bertero* court cited *Singleton* and again relied upon *Boogher*, stating: "Confronted with a similar question, the Supreme Court of Missouri reasoned, '. . . it would seem almost a mockery to hold that, by uniting groundless accusations with those for which probable cause might exist, the defendants could thereby escape liability, because of the injured party's inability to divide his damages between the two with delicate nicety.' (*Boogher* v. *Bryant* (1885) 86 Mo. 42, 50; cf., *Gowin* v. *Heider* (1964) 237 Ore. 266, 281 [386 P.2d 1, 8, 391 P.2d 630].) We adopted the foregoing reasoning in *Singleton* and held that the plaintiff did not have 'the further burden of showing that her damage was specifically attributable to the malicious prosecution as opposed to the prosecution which the jury found was not malicious.' (*Singleton* v. *Perry, supra,* 45 Cal.2d 489, 498.)" (*Bertero* v. *National General Corp., supra,* 13 Cal.3d 43, 56.)

Discussing *Albertson,* the *Bertero* court stated: "In *Albertson* v. *Raboff* . . . the defendant had previously filed an action against the plaintiff seeking to recover on a promissory note and asserted therein a claim to plaintiff's real property on a theory of fraudulent conveyance. The defendant was successful in the prior action only as to the claim based on the note. Plaintiff then brought a suit charging slander of title and malicious prosecution. We held that a malicious prosecution action would lie on the claim of

fraudulent conveyance despite the existence of probable cause for the remaining claims, citing *Singleton.* (Cf. *Lerner* v. *Glickfeld, supra,* 187 Cal.App.2d 514, 524-525.)" (*Bertero* v. *National General Corp., supra,* 13 Cal.3d 43, 56.)

Finally, the *Bertero* court considered the argument that the question should be whether plaintiffs had reasonable grounds for the ultimate relief sought, " 'not whether they had such grounds for asserting each of the three theories contained in' " their pleading. (*Bertero* v. *National General Corp., supra,* 13 Cal.3d 43, 57.)[7] "We disagree," stated the Supreme Court. "A plaintiff acting in good faith may safely sue on alternative theories after full disclosure to counsel when he possesses a reasonable belief in the validity of *each* of those theories. . . . We see no reason for permitting plaintiffs . . . to pursue shotgun tactics by proceeding on counts and theories which they know or should know to be groundless." (*Ibid.*)

### (4) *The Crowley case.*

*Crowley* v. *Katleman* (1994) 8 Cal.4th 666 [34 Cal.Rptr.2d 386, 881 P.2d 1083] involved a will contest. The beneficiary under the will successfully defended the will, then sued alleging that five out of the six grounds advanced to attack the will had been maliciously prosecuted. The trial court sustained a demurrer without leave to amend. The Court of Appeal reversed " 'under compulsion' " of *Bertero,* but "strongly criticized" the *Bertero* rule. (*Crowley* v. *Katleman, supra,* 8 Cal.4th at p. 676.) The malicious prosecution defendant then petitioned the Supreme Court to overrule *Bertero.* The Supreme Court did revisit the issue, but rather than overruling *Bertero,* it affirmed the reversal, and reaffirmed the *Singleton-Albertson-Bertero* rule that each claim prosecuted must be supported by probable cause.

The *Crowley* court initially reviewed the "dual harms to society and to the individual that the cause of action for malicious prosecution is designed to redress: 'The malicious commencement of a civil proceeding is actionable because it harms the individual against whom the claim is made, and also because it threatens the efficient administration of justice.' (*Bertero, supra,* 13 Cal.3d at p. 50.)" (*Crowley* v. *Katleman, supra,* 8 Cal.4th 666, 677.) The court again rejected a claim similar to that of Mrs. Hyatt's attorneys here (that they had to file an unfounded claim or be guilty of malpractice), stating: "Nor could defendants herein contend they were compelled to assert

---

[7]Even this more lenient test, which the Supreme Court rejected, would not aid Mrs. Hyatt and her attorneys in this case, inasmuch as there were no grounds whatever for them to seek tort damages and punitive damages based on a pleading of fraud, conspiracy and malice, even if they might have been entitled to reimbursement for the payoff of the note and deed of trust.

all the statutory grounds for a will contest under pain of being deemed to have waived them: as we said in rejecting a similar argument in *Bertero*, 'A litigant is never compelled to file a malicious and fabricated action. It is not the assertion of a claim that is actionable but rather the malicious character of the assertion.' (13 Cal.3d at p. 52.)" (*Crowley* v. *Katleman, supra,* 8 Cal.4th at p. 679.) The court finally concluded that "litigation that is groundless and motivated by malice . . . has no place in our judicial system, and we are therefore unwilling to bear its costs. After careful consideration, we see no reason to reach a different result when the litigation in question is the assertion of baseless and malicious grounds of liability in a single lawsuit: in both instances the balance tips in favor of the policy of making whole the individuals harmed by such abuse of our courts." (*Id.* at p. 694, fn. omitted.) Thus *Bertero* was reaffirmed and continues to be controlling law. (*Crowley* v. *Katleman, supra,* 8 Cal.4th at p. 696; see also 5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 447, p. 531.)

 b. *The test for probable cause.*

█ *Sheldon Appel Co.* v. *Albert & Oliker* (1989) 47 Cal.3d 863 [254 Cal.Rptr. 336, 765 P.2d 498], states the controlling test for determining whether a claim is supported by probable cause. The question is whether, as an objective matter, "any reasonable attorney would have thought the claim tenable." (*Id.* at p. 886.) The answer depends upon the state of the law as well as the state of the facts. (*Ibid.* ["in evaluating whether or not there was probable cause for malicious prosecution purposes, a court must properly take into account the evolutionary potential of legal principles. (See, e.g., Rest.2d Torts, § 675, com. f.)"].) Thus the question is whether the claim was "objectively tenable" (*Sheldon Appel, supra,* 47 Cal.3d at p. 882) or "objectively reasonable" (*id.* at p. 883), or that the attorney had "a reasonable belief in the possibility of his suit being successful" (5 Witkin, Summary of Cal. Law, *supra,* Torts, § 447, p. 531), in light of all relevant circumstances, including the factual circumstances peculiar to the specific case and the existing state of the law. "The plaintiff . . . must have a reasonable belief in the validity of each of his theories; i.e., one reasonable ground will not excuse others which are without probable cause." (*Ibid.*, see also *Leonardini* v. *Shell Oil Co.* (1989) 216 Cal.App.3d 547, 567, 568 [264 Cal.Rptr. 883] ["probable cause element of a malicious prosecution action requires an objective determination of the 'reasonableness' of the defendant's prior lawsuit, i.e., whether, on the basis of the facts known to the defendant, the institution of the prior action was legally tenable"; "[a] litigant will lack probable cause for his action if he relies upon facts which he has no reasonable cause to believe to be true, or seeks recovery upon a legal theory which is untenable under the facts known to him"].) The question of

probable cause must be determined by the court. (*Sheldon Appel, supra*, 47 Cal.3d at p. 868; 5 Witkin, Summary of Cal. Law, *supra*, Torts, § 447, p. 531.)

> c. *Mrs. Hyatt and her attorneys had probable cause to seek recovery on the theory that the deed of trust was unenforceable.*

■ Since the law regarding the validity of an encumbrance placed on community real property by only one spouse was in a state of flux at the time of the filing of Mrs. Hyatt's lawsuit, there was probable cause to file this claim in the first instance. Dr. Mabie concedes this point, but argues that Mrs. Hyatt's failure to supplement and amend her complaint to plead for reimbursement after the condominium was sold, the note paid, and the deed of trust reconveyed, transformed the claim pleaded into one no longer supported by probable cause. It is true that it would have been technically more correct to supplement and amend the complaint after the condominium sale to seek reimbursement instead of cancellation. However, both the trial court and the Court of Appeal dealt with the substance of Mrs. Hyatt's claim rather than with its precise technical limitations, and treated the case as one for reimbursement. The Court of Appeal, for example, characterized Mrs. Hyatt's claim as one for "damages" and for "reimbursement." A reasonable attorney could have considered a claim for reimbursement tenable. (*Sheldon Appel Co.* v. *Albert & Oliker, supra*, 47 Cal.3d 863.) The law had recently been clarified that a deed of trust created by only one spouse was voidable. The condominium had been sold and the note paid only shortly before this ruling. Especially taking into account "the evolutionary potential of legal principles," (*id.* at p. 886) it was objectively reasonable for an attorney to believe that a claim for reimbursement might be successful. The summary judgment to this extent must therefore be affirmed.

> d. *Mrs. Hyatt and her attorneys had no probable cause to sue for fraud, conspiracy, malice and punitive damages.*

Mrs. Hyatt's attorneys in the underlying action argued that any reasonable attorney, having the information they had, would find it necessary to sue Mrs. Mabie and Dr. Mabie for fraud, conspiracy, malice and punitive damages, for not to do so would be malpractice. These attorneys mis-conceived the nature of their professional duties and our system of civil procedure.

■ Pleading a claim unsupported by probable cause is more likely to constitute malpractice than the opposite. This is so because it exposes the client to a malicious prosecution claim. There is never any legitimate basis

for pleading a claim unsupported by probable cause. (See, e.g., *Crowley* v. *Katleman, supra*, 8 Cal.4th at p. 679; *Bertero* v. *National General Corp.*, 13 Cal.3d, *supra*, at p. 52.) The requirement of probable cause for each claim prosecuted wisely protects defendants against malicious prosecution while imposing no undue burden on plaintiffs. If a plaintiff can file *one* legitimate claim, that plaintiff then has access to the full panoply of statutory discovery devices. The scope of allowable discovery is broader than strict relevancy to the issues raised by the pleadings. (See generally, Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 1997) ¶¶ 8:65 to 8:108.7.) There are several reasons why the system is structured this way. One such reason is to enable a plaintiff to determine whether there are grounds for amending a complaint to add additional claims.[8] Moreover, in addition to discovery, investigation is always available, even without filing suit. If discovery and investigation develop factual grounds justifying a timely amendment to a pleading, leave to amend must be liberally granted. (See, e.g., Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial, *supra*, ¶¶ 6:638, 6:639.)

Mrs. Hyatt's counsel could have availed themselves of this carefully balanced system simply by filing their claim for cancellation or reimbursement under the *Droeger* theory. That would have made available to them all the discovery devices necessary to determine whether there was any evidence that Mrs. Mabie and Dr. Mabie had engaged in fraudulent conduct. Instead, they placed the cart before the horse. They ignored the legitimate interests of Mrs. Mabie and Dr. Mabie, abandoned their professional duty of evaluation and investigation, and precipitously sued Mrs. Mabie and Dr. Mabie on completely unfounded charges of fraud, conspiracy and malice. They then compounded their misdeeds by pressing these unsupported claims to trial despite their failure to obtain any evidence of any kind to support them.[9]

Counsel here were apparently involved in a bitter dissolution action involving a disreputable husband, possibly even one who engaged in criminal conduct towards his wife. But there was no evidence connecting any of

---

[8]Other reasons are to aid in case evaluation and preparation, and settlement.

[9]An odd thread running through the statements and arguments of Mrs. Hyatt's former attorneys is their emphasis that their fraud claim was pleaded "on information and belief." It appears in their depositions and in their brief on appeal. For example, their brief states: "During the discovery phase of the litigation, [the attorneys] were unable to obtain any direct evidence which they believed would support the causes of action, alleged on the basis of information and belief, that [Mrs. Mabie and Dr. Mabie] participated in a conspiracy to defraud Mrs. Hyatt of her interest in a community property asset." The suggestion seems to be that by placing the incantation "information and belief" in a pleading, an attorney can insulate herself or himself from liability for malicious prosecution. No authority has been suggested for such a theory. (Cf. 5 Witkin, Summary of Cal., *supra*, Torts, § 431 et seq., p. 512.) A brief moment's thought would show that it simply cannot be right. If it were right, the tort of malicious prosecution would be no more. Only the uninformed would fail to place the magic

that to Mrs. Mabie or Dr. Mabie. In fact, all the evidence was to the contrary, supporting only the conclusion that Mrs. Mabie and Dr. Mabie were simply innocent remote lenders. In a situation of complete absence of supporting evidence, it cannot be adjudged reasonable to prosecute a claim. The instant case is as clear a case of lack of probable cause as can be imagined. If probable cause could properly be found in this case, then probable cause would exist for virtually any claim, no matter how unfounded. The protective effects of malicious prosecution law would then be eliminated. This is not the law. As the Supreme Court so recently reaffirmed, each claim advanced must be objectively reasonable. (*Crowley* v. *Katleman, supra,* 8 Cal.4th 666.)

## III. CONCLUSION.

In view of the clear record of undisputed facts, we are as in as good a position as the trial court to determine the probable cause issue, with one exception. It is undisputed that Mrs. Hyatt and her attorneys never had any evidence to support the fraud, conspiracy, malice and punitive damage claims they prosecuted. They admitted this in depositions, on the record in open court, and in responses to requests for admission. This record clearly establishes that the attorneys lacked probable cause, and also establishes that Mrs. Hyatt lacked probable cause unless Mrs. Hyatt can prove a defense of reasonable reliance on advice of counsel.

Dr. Mabie additionally argues that the Third District's finding in *Hyatt* v. *Mabie, supra,* 24 Cal.App.4th 541, 548, that "plaintiff has no legitimate basis for characterizing defendant's actions as unlawful" and that plaintiff had "utterly failed to prove any wrongdoing" constitutes the law of the case and collaterally estop Mrs. Hyatt and her attorneys from now claiming that they did have probable cause. "No legitimate basis" does seem necessarily to mean no probable cause, since the terms are essentially synonymous. We need not rely on this ground, however, in view of the unusual clarity in the record.

We hold as a matter of law that, in view of the undisputed facts set forth above, Mrs. Hyatt's former attorneys had no probable cause to file and prosecute the fraud, conspiracy, malice and punitive damage claims in the underlying lawsuit.

---

words "information and belief" in their pleadings. Unscrupulous attorneys could file the most scurrilous and unfounded claims with impunity. This is not the law. Probable cause is the law.

Making a statement on information and belief may insulate the declarant from criminal perjury liability which otherwise might attach if the statement is under oath, or it might avoid a judicial admission. (Cf. 4 Witkin, Cal. Procedure (4th ed. 1997) Pleading, §§ 359, 360, pp. 461-463.) But no one can obtain a license to maliciously prosecute a lawsuit simply by reciting "information and belief."

We further hold that, based on the arguments presented on appeal, Mrs. Hyatt herself had no probable cause to sue for fraud, conspiracy, malice and punitive damages.

However, Mrs. Hyatt's cross-complaint against her former attorneys suggests that she may be relying upon a defense of advice of counsel (see, e.g., 5 Witkin, Summary of Cal. Law, *supra*, Torts, § 449, p. 533). Mrs. Hyatt has also petitioned for rehearing on the theory that she is relying on an advice of counsel defense. Although the defense of advice of counsel was not raised in Mrs. Hyatt's brief on appeal, proof of reasonable reliance on advice of counsel might negate both the lack of probable cause and malice elements of the tort of malicious prosecution. We conclude, therefore, that Mrs. Hyatt should be permitted to attempt to prove this defense after remand. However, unless Mrs. Hyatt can prove reasonable reliance on advice of counsel, the undisputed facts show that she lacked probable cause to file and prosecute the fraud, conspiracy, malice and punitive damages claims against Mrs. Mabie and Dr. Mabie.

## IV. DISPOSITION.

The summary judgment is affirmed as to the claim for malicious prosecution of the claim for cancellation of deed of trust and/or reimbursement. The summary judgment is reversed as to the claim for malicious prosecution of the fraud, conspiracy, malice and punitive damages claims. The cost award against Mrs. Mabie and Dr. Mabie is reversed. Costs are awarded to Mrs. Mabie's estate and Dr. Mabie on appeal. The matter is remanded for further proceedings consistent with this opinion.

Boren, P. J. , and Nott, J., concurred.

A petition for a rehearing was denied March 10, 1998, and respondents' petition for review by the Supreme Court was denied May 20, 1998.