Filed 6/6/19

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| ANTONIO CUEVAS-MARTINEZ, | |
| Plaintiff and Appellant, | E070843 |
| v. | (Super.Ct.No. PSC1705925) |
| SUN SALT SAND, INC. et al., | OPINION |
| Defendants and Respondents. | |

APPEAL from the Superior Court of Riverside County.  David M. Chapman, Judge.  Reversed.

Law Offices of David W. Osborne and David W. Osborne for Plaintiff and Appellant.

Law Offices of Kalab A. Honey, Kalab A. Honey, and Michael B. Petersen for Defendants and Appellants.

After successfully obtaining summary judgment on a lawsuit brought by his former employer, Antonio Cuevas-Martinez sued the employer and their attorney (collectively, respondents) for malicious prosecution.  Respondents filed an anti-SLAPP motion to strike the complaint.  (Code Civ. Proc., § 425.16, unlabeled statutory citations refer to this code.)[1]  The trial court granted the motion, concluding Cuevas-Martinez failed to present prima facie evidence respondents filed the lawsuit without probable cause.  The court based its ruling on *Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728 (*Jarrow*), which held the entry of summary judgment on a prior lawsuit for insufficient evidence does not, by itself, establish a probability of prevailing on the merits of a subsequent malicious prosecution claim.  (*Id.* at p. 742.)

On appeal, Cuevas-Martinez argues *Jarrow* is inapplicable because he did not rely on the mere fact of summary judgment victory, but instead submitted evidence that, if credited by a trier of fact, would support a verdict in his favor.  We agree Cuevas-Martinez has demonstrated his claim has the requisite minimal merit to survive anti-SLAPP scrutiny, and will therefore reverse.

---

[1]  "SLAPP" is an acronym for "strategic lawsuit against public participation." (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 57, fn. 1.)

# I

# FACTS

A.    *The Underlying Complaint*

Farouk Nurani and his wife Salima Nurani own and operate a restaurant in Palm Desert called Grill-A-Burger.[2]  Cuevas-Martinez worked as their head cook until they fired him in April 2015.  Afterward, he opened his own burger restaurant in Cathedral City called Tony's Burgers.  The Nuranis sued him, seeking over $200,000 in damages and asserting six causes of action—misappropriation of trade secrets, interference with prospective economic advantage, interference with contractual relationships, conversion, unfair business practices, and injunctive relief.

The Nuranis made the following allegations in their complaint.  They claimed they had a good working relationship with Cuevas-Martinez until he began showing up late and missing shifts, at which point they felt forced to fire him.  They learned after his termination that he had been working, over the previous few months, toward opening his own restaurant.  They also learned he had solicited some of their employees to work for him.  They said he solicited their customers too, telling them his new restaurant would have the same food at better prices, and that Grill-A-Burger would fail without him.  They said he was using their exact recipes and had given his menu items "confusingly similar names."  The Nuranis alleged they had "paid a significant sum of money" to

_____

[2]  They operate Grill-A-Burger through their company Sun Salt Sand, Inc., a named defendant in the malicious prosecution lawsuit.

3

Grill-A-Burger's previous owners "for the ability to use [those recipes and names] exclusively."

The Nuranis also alleged Cuevas-Martinez ruined their relationships with their suppliers. They said that immediately after Tony's Burgers opened, their suppliers informed them they would "no longer supply [Grill-A-Burger], despite repeated years of service." They alleged this was the result of Cuevas-Martinez making "certain ill-willed and disparaging comments" about them or their restaurant. Finally, they alleged Cuevas-Martinez stole at least $30,000 of equipment and supplies from their inventory to stock his restaurant.

B.    *Summary Judgment*

Cuevas-Martinez moved for summary judgment on each cause of action, and the trial court granted his motion in its entirety.

1.    *Misappropriation of trade secrets*

The Nuranis based their misappropriation claim on the theory that their recipes were trade secrets. Cuevas-Martinez submitted the declaration of his attorney, who said the Nuranis had produced the alleged trade secret document—a collection of recipes— only after being compelled to do so by court order. He pointed out the Nuranis had not requested any privacy protection for the document before producing it. In his own declaration, Cuevas-Martinez said he had been an at-will employee and had no employment agreement or covenant not to compete with the Nuranis. He denied using their recipes and said his menu items and recipes were different than Grill-A-Burger's.

He said the first time he saw the alleged trade secret document was after the Nuranis produced it in discovery.

Cuevas-Martinez also submitted the declaration of the previous owners of Grill-A-Burger, who denied transferring any proprietary information to the Nuranis during the sale and said the alleged secret recipe document was no secret. They said when the Nuranis had asked them for their recipes, they put together a document containing the same information as Grill-A-Burger's public menu. They attached the recipe document and the Grill-A-Burger menu to their declaration.

In opposition, the Nuranis submitted Farouk's declaration. He said when he bought Grill-A-Burger, he signed a "Business Purchase Agreement," which included the restaurant's "proprietary information." He said he believed the previous owners had hired a chef to create proprietary recipes. He said he and his wife were the only people who had access to the document containing those recipes.

The trial court concluded that the Nuranis had failed to dispute the testimony of the previous owners, who said that the purchase agreement did not include any proprietary recipes and that there were no proprietary recipes or trade secrets at Grill-A-Burger. The court concluded the evidence established the recipe document was simply a recitation of Grill-A-Burger's menu, which was available to the public. As a result, the court concluded there was "nothing unique or confidential about [Grill-A-Burger's] ingredients or preparation techniques that could constitute a trade secret."

5

2.    *Intentional interference with contractual relationships*

The Nuranis initially based their intentional interference with contractual relationships claim on the theory Cuevas-Martinez wrongfully interfered with their contracts with their employees, but they later amended their complaint to add the theory that he also interfered with their contracts with their suppliers. In discovery, they identified Pepsi and West Central Produce as the suppliers who would no longer sell to them based on Cuevas-Martinez's alleged disparaging conduct.

In his declaration, Cuevas-Martinez said he did not make any disparaging comments about Grill-A-Burger or the Nuranis to Pepsi or West Central Produce. His attorney said the record custodians at those companies told him they did not have any contracts with Grill-A-Burger, and the Nuranis had simply stopped ordering supplies from them. Both custodians signed affidavits stating their companies had no documents or records pertaining to any termination of services for Grill-A-Burger.

In their response to Cuevas-Martinez's separate statement of undisputed facts, the Nuranis admitted they did not have contracts with their suppliers. In his declaration, Farouk said, "[d]iscussions with certain [Grill-A-Burger] vendors regarding the things said by [Cuevas-Martinez] to those vendors prior to [his] termination led to a deterioration in [our] relationship with those vendors, and ultimately *caused [us] to look elsewhere* for services and products provided by those vendors." (Italics added.)

The trial court concluded that Cuevas-Martinez had produced evidence the Nuranis did not have contracts with their suppliers and that the Nuranis failed to create a triable issue of fact on that element of the claim.

### 3.     *Other claims*

The Nuranis based their claim of intentional interference with prospective economic advantage on three theories—that Cuevas-Martinez wrongfully interfered with their business relationship with their (i) customers, (ii) suppliers, and (iii) employees.  In his declaration, Cuevas-Martinez denied making any disparaging comments about Grill-A-Burger to its customers or employees.  Farouk declared in opposition that "multiple customers" told him Cuevas-Martinez had told them he was going to open his own similar restaurant and Grill-A-Burger would go out of business as a result.  Farouk also said that shortly after he fired Cuevas-Martinez, "multiple" Grill-A-Burger employees quit and he later learned they were working for Cuevas-Martinez.  In the separate statement of undisputed facts, the Nuranis claimed they had until trial to "determine the specific identity" of the customers to whom Cuevas-Martinez made his allegedly disparaging statements.  Cuevas-Martinez objected to that response as evasive and a misuse of discovery.  The trial court concluded that the Nuranis had failed to provide admissible evidence to dispute Cuevas-Martinez's testimony he did not wrongfully interfere with Grill-A-Burger's relationship with its employees or customers.  The court sustained Cuevas-Martinez's objection that the Nuranis were being evasive by saying they had until trial to identify the customers.

With regard to the conversion claim, Cuevas-Martinez denied stealing any of Grill-A-Burger's personal property to use at his restaurant. He also argued the Nuranis had not specifically identified the $30,000 in property he had allegedly taken. In their discovery responses, the Nuranis identified the allegedly stolen property as "napkins, beer, paper products, utensils, glasses, dry goods, canned goods and a blender for making shakes." In his declaration, Farouk said he had "order summaries" and "month-to-month revenue reports" (which respondents never produced) showing that in the months leading up to his termination, Cuevas-Martinez had been ordering ingredients and supplies "well in excess" of what was needed and historically ordered. The trial court concluded the Nuranis had failed to present admissible evidence showing their ownership of any specific allegedly stolen property.

C.  *The Malicious Prosecution Suit and Anti-SLAPP Motion*

After successfully defending the lawsuit, Cuevas-Martinez sued respondents for malicious prosecution. Respondents moved to strike the complaint as a SLAPP, arguing their prior lawsuit was protected activity and Cuevas-Martinez could not demonstrate a probability of prevailing on the merits. To demonstrate he could prevail, Cuevas-Martinez submitted a declaration explaining how the trial court had granted summary judgment in his favor on each cause of action in the prior suit based on insufficient evidence. In addition, he attached the record of the summary judgment proceedings (the briefing, supporting evidence, and ruling), as well as the Nuranis' discovery responses.

8

The same judge who decided the summary judgment motion in the prior lawsuit decided the anti-SLAPP motion.  The court concluded Cuevas-Martinez failed to present prima facie evidence respondents lacked probable cause when they brought or prosecuted their lawsuit.  The court stated, "[Cuevas-Martinez] points to this court's ruling on the summary judgment motion in the underlying case as support for finding that the prior suit was brought without probable cause."  Citing *Jarrow*, the court continued, "[h]owever, defense summary judgment on the underlying claim 'does not establish as a matter of law that the litigant necessarily can "state[] and substantiate[] . . . a subsequent malicious prosecution claim."'"  (*Jarrow*, *supra*, 31 Cal.4th at p. 742.)  The court noted Cuevas-Martinez had also submitted "the documents filed in the summary judgment motion," but reiterated *Jarrow's* holding that entry of summary judgment for insufficient evidence "does not equate to evidence that those claims were filed without probable cause such that no reasonable attorney would have thought the claims were tenable."  Cuevas-Martinez timely appealed.

## II

## ANALYSIS

A.    *Standard of Review and Statutory Framework*

Under California's anti-SLAPP statute, the court must strike a "cause of action" arising from a defendant's act in furtherance of a constitutionally protected right of free speech unless the plaintiff shows a probability of prevailing on the merits.  (§ 425.16, subd. (b)(1).)  It is undisputed Cuevas-Martinez's malicious prosecution lawsuit arises

9

from protected activity. The issue on appeal is whether he made a sufficient showing of probable success.

We consider that issue de novo. (*Wilcox v. Superior Court* (1994) 27 Cal.App.4th 809, 824.) To survive anti-SLAPP scrutiny, a plaintiff need only establish their cause of action has "minimal merit." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89.) Applying a "summary-judgment-like" test (*Taus v. Loftus* (2007) 40 Cal.4th 683, 714), we accept as true the admissible evidence favorable to Cuevas-Martinez, and evaluate respondents' evidence only to determine whether it defeats Cuevas-Martinez's showing as a matter of law. (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 291 (*Soukup*); *Wilcox*, at p. 828 [we must draw "every legitimate favorable inference" from the plaintiff's evidence].) In other words, we determine "whether a prima facie showing has been made that would warrant the claim going forward." (*HMS Capital, Inc. v. Lawyers Title Co.* (2004) 118 Cal.App.4th 204, 212; *Zamos v. Stroud* (2004) 32 Cal.4th 958, 965 (*Zamos*) ["Whether plaintiffs have established a prima facie case is a question of law"].)

To succeed, a malicious prosecution plaintiff must show the defendant (i) initiated an action that was ultimately terminated in the plaintiff's favor and (ii) brought or maintained that action without probable cause and (iii) with malice. (*Soukup*, *supra*, 39 Cal.4th at pp. 292, 296; *Zamos*, *supra*, 32 Cal.4th at p. 960.) Probable cause "must exist for *every* cause of action advanced in the underlying action." (*Soukup*, at p. 292, italics added.) Thus, a cause of action for malicious prosecution "'lies when but one of alternate theories of recovery is maliciously asserted.'" (*Ibid.*; *Crowley v. Katleman* (1994) 8

10

Cal.4th 666, 681 (*Crowley*) [a litigant commits malicious prosecution by bringing an action charging multiple grounds of liability when some, but not all, of those grounds were asserted with malice and without probable cause].)

As an initial matter, we discuss the proper scope of the anti-SLAPP analysis in this case. Cuevas-Martinez's complaint asserts a single cause of action for malicious prosecution. The claim alleges respondents initiated and prosecuted their lawsuit without probable cause and with malice, and that the suit was terminated in Cuevas-Martinez's favor at the summary judgment stage. To support his claim, Cuevas-Martinez describes how respondents lacked evidence to support each of the six causes of action in the prior lawsuit.

The anti-SLAPP statute permits striking only a "cause of action." (§ 425.16, subd. (b)(1).) And for purposes of an anti-SLAPP motion, the "primary rights" theory applies to define "cause of action" and to limit what can be struck. (*South Sutter, LLC v. LJ Sutter Partners, L.P.* (2011) 193 Cal.App.4th 634, 659; *Marlin v. Aimco Venezia, LLC* (2007) 154 Cal.App.4th 154, 162.) The primary rights theory provides that a cause of action """"is comprised of a 'primary right' of the plaintiff, a corresponding 'primary duty' of the defendant, and a wrongful act by the defendant constituting a breach of that duty."""" (*Crowley*, *supra*, 8 Cal.4th at p. 681.) """"The most salient characteristic of a primary right is that it is indivisible: the violation of a single primary right gives rise to but a single cause of action."""" (*Ibid.*)

11

In the context of a malicious prosecution action, "'When a complaint alleges multiple theories of liability or "counts," the counts "are merely ways of stating the same cause of action differently." [Citation.] Accordingly, the only way that a litigant can show probable cause for the cause of action as a whole—or for the "primary right"—is to show probable cause for *each* of the counts or theories alleged.'" (*Crowley*, *supra*, 8 Cal.4th at p. 683, fn. 11, italics added.) Thus, even when the prior lawsuit involves multiple causes of action, the subsequent malicious prosecution action seeks "to vindicate a single primary right—the right to be free from defending against a lawsuit initiated with malice and without probable cause." (*Hindin v. Rust* (2004) 118 Cal.App.4th 1247, 1258.)

For anti-SLAPP purposes, a plaintiff who "'can show a probability of prevailing on *any part* of *its claim*'" does not have a meritless claim and a motion to strike is not proper—"'the entire cause of action stands.'" (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 820 (*Oasis*).) So, if a single cause of action arising entirely from protected activity asserts "a number of acts of alleged misconduct and theories of recovery, . . . for purposes of reviewing the ruling on an anti-SLAPP motion, *it is sufficient to focus on just one*," if that one has the requisite merit. (*Id.* at p. 821, italics added.)

Here, then, because Cuevas-Martinez asserts a single malicious prosecution cause of action premised on numerous theories, he needed to show only the requisite merit as to any one of those theories. Thus, if he made an adequate showing that (i) respondents lost

12

their prior lawsuit and (ii) they litigated any one of their causes of action without probable cause and with malice, then he should have defeated the anti-SLAPP motion and his complaint—*in its entirety*—should have its day in court. Because it is undisputed respondents lost the prior lawsuit, we limit our review to determining whether Cuevas-Martinez presented a prima facie case that they litigated any of their causes of action without probable cause and with malice.[3]

B.    *Lack of Probable Cause*

"The question of probable cause is 'whether, as an objective matter, the prior action was legally tenable or not.'" (*Soukup*, *supra*, 39 Cal.4th at p. 292.) "'A litigant will lack probable cause for his action either if he relies upon facts which he has no reasonable cause to believe to be true, or if he seeks recovery upon a legal theory which is untenable under the facts known to him.'" (*Ibid.*) A litigant lacks probable cause to continue prosecuting a claim if there is a "'complete absence of supporting evidence.'" (*Ibid.*)

---

[3] In their anti-SLAPP reply brief in the trial court, respondents argued *Baral v. Schnitt* (2016) 1 Cal.5th 376 authorized the court to strike allegations from Cuevas-Martinez's complaint "in a piecemeal fashion" if it found he had demonstrated a prima facie case of malicious prosecution on some, but not all, of their causes of action. Respondents do not revive this argument on appeal, but if they had, we would reject it. *Baral* applies to "mixed causes of action," that is, causes of action based on both protected and unprotected activity. (*Id.* at p. 392 ["when the defendant seeks to strike particular claims supported by allegations of protected activity that appear alongside other claims within a single cause of action, the motion cannot be defeated *by showing a likelihood of success on the claims arising from unprotected activity*"], italics added.) By definition, a cause of action for malicious prosecution is based entirely on protected activity—filing and prosecuting a lawsuit. Because this case concerns only protected activity, *Oasis*, not *Baral*, applies.

13

Here, the trial court relied on the holding in *Jarrow* to conclude Cuevas-Martinez had not carried his burden of presenting evidence respondents lacked probable cause when they filed or prosecuted their lawsuit. In *Jarrow*, the plaintiff relied *entirely* on the minute order from the prior lawsuit granting his motion for summary judgment to demonstrate a probability of prevailing, pointing out the minute order stated there was "'no competent evidence'" to support the prior action. (*Jarrow*, *supra*, 31 Cal.4th at p. 743.) In other words, the trial court's order was the only evidence he presented to oppose the anti-SLAPP motion. He argued that, as a matter of law, if a defendant obtains summary judgment for insufficient evidence, their subsequent malicious prosecution suit should survive anti-SLAPP scrutiny. The California Supreme Court refused to create such a per se rule—"The entry of summary judgment for the defense on an underlying claim on grounds of insufficient evidence does not establish as a matter of law that the litigant necessarily can 'state[ ] and substantiate[ ]' . . . a subsequent malicious prosecution claim." (*Id*. at p. 742.)

Here, in contrast, Cuevas-Martinez did not rely solely on the trial court's summary judgment ruling to demonstrate a probability of success. Instead, he submitted the evidence he and respondents presented during the summary judgment proceedings, and he also submitted the Nuranis' discovery responses. In short, he submitted more, and more meaningful, evidence than the plaintiff in *Jarrow* had. The trial court was required to review that evidence in the light most favorable to Cuevas-Martinez to determine if his claim had minimal merit. (*Soukup*, *supra*, 39 Cal.4th at p. 291.)

14

Conducting an independent review of that evidence, as we must on appeal, we conclude it establishes a prima facie case respondents prosecuted the lawsuit without probable cause. The record reveals there were at least two claims in the underlying lawsuit that the Nuranis and their attorney knew or should have known were untenable. The first is the claim for intentional interference with contractual relationships. As its name implies, the existence of a valid contract is essential to the cause of action. (E.g., *Pacific Gas & Electric Co. v. Bear Stearns & Co.* (1990) 50 Cal.3d 1118, 1126.) But respondents amended their complaint to add the claim that Cuevas-Martinez interfered with their suppliers' performance of their contractual duties, despite knowing full well Grill-A-Burger *had no contracts with any of its suppliers*, including Pepsi and West Coast Produce.

On appeal, respondents contend Cuevas-Martinez "cannot point to . . . a moment" where "probable cause was eliminated" because the nature of their claims "hinged on testimonial declarations setting forth the differing interpretations of contracts and conversations between the parties and witnesses." We disagree. The moment respondents realized Grill-A-Burger had no contracts with its suppliers was precisely the moment it became clear they lacked probable cause for the intentional interference with contractual relationships claim. This moment may have been different for the Nuranis than it was for their attorney, but at the very least, all respondents knew probable cause was lacking during discovery, when they were unable to produce any contracts with Pepsi or West Coast Produce, and when the records custodians for those companies said they

15

had no documents pertaining to termination of services for Grill-A-Burger. Although attorneys may rely on their clients' allegations at the outset of a case, they may not continue to do so if the evidence developed through discovery indicates the allegations are unfounded or unreliable. (*Sycamore Ridge Apartments LLC v. Naumann* (2007) 157 Cal.App.4th 1385, 1405-1406.)

A plaintiff lacks probable cause if he "seeks recovery upon a legal theory which is untenable under the facts known to him." (*Soukup*, *supra*, 39 Cal.4th at p. 292.) Cuevas-Martinez introduced evidence tending to show such was the case here. Respondents pursued their claim that Cuevas-Martinez wrongfully interfered with their contracts with Pepsi and West Cost Produce—a claim they amended their complaint to add—despite knowing they had no contracts with those suppliers. (*Mabie v. Hyatt* (1998) 61 Cal.App.4th 581, 597 ["'In a situation of complete absence of supporting evidence, it cannot be adjudged reasonable to prosecute a claim'"].)

The evidence tended to show the Nuranis' misappropriation of trade secrets claim also lacked probable cause. In discovery, they presented no evidence to support their belief the Grill-A-Burger recipe document contained trade secrets. At the summary judgment stage, Cuevas-Martinez submitted the testimony of the previous owners who stated in no uncertain terms that the recipes were not trade secrets. The previous owners also directly refuted the Nuranis' claim that they paid extra for trade secrets when they purchased the restaurant. In their opposition, rather than deny that testimony or present evidence to contradict it, the Nuranis reasserted their (now refuted) belief the recipes

16

were trade secrets. What is more, they doubled down on that refuted belief. Farouk claimed he had signed a "Business Purchase Agreement" that included Grill-A-Burger's "proprietary information." If such a document existed, respondents were required to produce it. That they never did supports an inference Farouk was misrepresenting the document's existence or its contents. Either way, Cuevas-Martinez's evidence supports a finding that respondents knew they had no evidence to support their misappropriation claim.

That Cuevas-Martinez demonstrated a prima facie case respondents lacked probable cause for at least two of the claims in the prior action is more than sufficient to carry his anti-SLAPP burden. We therefore conclude the trial court erred when it ruled Cuevas-Martinez did not establish a probability of prevailing on the probable cause element.

C.     *Malice*

We now move to the malice element, which "goes to the defendant's subjective intent in initiating the prior action." (*Sierra Club Foundation v. Graham* (1999) 72 Cal.App.4th 1135, 1156.) "[M]alice is present when proceedings are instituted primarily for an improper purpose. Suits with the hallmark of an improper purpose are those in which . . . "'the person initiating them does not believe that his claim may be held valid [or] the proceedings are begun primarily because of hostility or ill will."'" (*Id.* at p. 1157.) "Since parties rarely admit an improper motive, malice is usually proven by circumstantial evidence and inferences drawn from the evidence." (*HMS Capital, Inc. v.*

17

*Lawyers Title Co.*, *supra*, 118 Cal.App.4th at p. 218.) "[M]alice can be inferred when a party *continues* to prosecute an action after becoming aware that the action lacks probable cause." (*Daniels v. Robbins* (2010) 182 Cal.App.4th 204, 226; *Soukup*, *supra*, 39 Cal.4th at pp. 292, 296.)

Here, we can infer malice based on the evidence that respondents pursued their interference with contractual relations claim against Cuevas-Martinez for over 20 months (through discovery and summary judgment), despite knowing the claim was baseless. (*Zamos*, *supra*, 32 Cal.4th at pp. 970-973 [demonstrating probability of prevailing on merits of malicious prosecution claim by presenting evidence the defendant attorneys continued to prosecute a prior fraud claim after receiving evidence conclusively establishing the claim was meritless]; *Bergman v. Drum* (2005) 129 Cal.App.4th 11 [plaintiff made a prima facie case of malicious prosecution by submitting evidence the attorney continued to prosecute her for auto insurance liability, despite receiving DMV records establishing she was not the owner of the car at the time of the accident].) In addition, Cuevas-Martinez submitted a declaration in which he said that on his last day of work at Grill-A-Burger, Farouk told him he would "get back at me for wanting to open my own restaurant." Cuevas-Martinez also said he believed the Nuranis had filed their lawsuit "for the primary purpose of forcing me to expend significant time and money in defending the action in the hopes it would harm the opening of my new restaurant."

Interpreting this evidence in Cuevas-Martinez's favor, we conclude it constitutes a prima facie showing of malice.

Cuevas-Martinez presented evidence that, if believed by the trier of fact, is sufficient to support a judgment in his favor. As a result, his entire complaint should have survived anti-SLAPP scrutiny.

## III

## DISPOSITION

We reverse the judgment and the order granting respondents' anti-SLAPP motion and awarding them attorney fees and costs as prevailing parties under section 425.16, subdivision (c). We direct the trial court to enter a new order denying the motion. Cuevas-Martinez shall recover his costs on appeal.

CERTIFIED FOR PUBLICATION


SLOUGH_____
                                    Acting P. J.

We concur:


FIELDS_____
                J.


MENETREZ_____
                J.

19