Filed 2/19/20

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| KEVIN KINSELLA, | D074989 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2018-00006622-CU-MC-CTL) |
| TAMARA KINSELLA, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County, Ronald L. Styn, Judge. Reversed and remanded with directions.

Mazzarella & Mazzarella and Mark C. Mazzarella for Plaintiff and Appellant.

Wolfe Legal Group, Deborah A. Wolfe and Brian P. Worthington for Defendant and Respondent.

In this lawsuit, the trial court ruled that the malicious prosecution complaint was a SLAPP and struck it pursuant to Code of Civil Procedure section 425.16

(section 425.16).[1] Plaintiff Kevin Kinsella appeals, arguing that the trial court erred in determining that he did not establish the requisite probability of prevailing on the merits of his claim against defendant Tamara Kinsella.[2] We agree and will reverse the judgment.

## I.  INTRODUCTION

To establish a cause of action for malicious prosecution, one of the elements the plaintiff must prove is that the defendant lacked probable cause to bring the prior action. (*Parrish v. Latham & Watkins* (2017) 3 Cal.5th 767, 775 (*Parrish*).)  One way the malicious prosecution defendant can establish probable cause for having brought the prior action, thereby defeating the later malicious prosecution claim, is by showing an interim victory on the merits in the prior action—such as the denial of a motion for summary judgment by the defendant (i.e., the plaintiff in the malicious prosecution action)—even where the prior action is ultimately terminated in favor of the defendant. (*Id.* at pp. 776-777; *Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 819 (*Wilson*).)  This is known as the interim adverse judgment rule.  The rule will not be applied, however, where the interim victory in favor of the plaintiff in the prior action

---

[1]     " ' "SLAPP" is an acronym for "strategic lawsuit against public participation." ' " (*Sweetwater Union High School Dist. v. Gilbane Building Co.* (2019) 6 Cal.5th 931, 939, fn. 5 (*Sweetwater*).)  The SLAPP statute, which sets forth the standards and procedure (anti-SLAPP motion) for striking the complaint in a SLAPP, is found at section 425.16.

[2]     Kevin and Tamara are former spouses who share the same surname.  To avoid confusion, and consistent with the parties' appellate briefing, we shall refer to them by their first names.

(i.e., the defendant in the malicious prosecution action) was obtained by means of fraud, perjury, or other unfair conduct. (*Carpenter v. Sibley* (1908) 153 Cal. 215, 218 (*Carpenter*); *Wilson* at pp. 817, 820, 825; *Parrish*, at pp. 776-778, 782.) This is known as the fraud exception to the interim adverse judgment rule.

In the present case, these issues arise in the procedural context of an anti-SLAPP motion brought by Tamara, the defendant in Kevin's malicious prosecution complaint. Shortly after Tamara initiated dissolution of marriage proceedings against Kevin, Tamara sued Kevin based on what she contended was his promise, prior to their marriage, that the property and income they acquired during their relationship would belong equally to both of them (*Marvin* Action). After Tamara voluntarily dismissed the *Marvin* Action, Kevin sued her for malicious prosecution in the present action.

Seeking to have Kevin's malicious prosecution complaint stricken as a SLAPP, Tamara responded with a section 425.16 anti-SLAPP motion. In her effort to establish that Kevin could not show she lacked probable cause to prosecute the *Marvin* Action, Tamara relied on the interim adverse judgment rule: She (1) presented evidence that the trial court in the *Marvin* Action denied Kevin's motion for summary judgment, and (2) argued that this interim victory on Kevin's summary judgment motion precluded Kevin from establishing that Tamara lacked the requisite probable cause to file and prosecute the *Marvin* Action. In opposition, Kevin relied on the fraud exception to the interim adverse judgment rule: He argued that, because Tamara defeated Kevin's summary judgment motion in the *Marvin* Action by having submitted materially false facts on which the court relied in denying the motion, Tamara was not entitled to rely on

3

the interim adverse judgment rule's presumption that resulted from the denial of his summary judgment motion in the *Marvin* Action.

The trial court granted Tamara's anti-SLAPP motion. In relevant part, the court ruled as follows: By the application of the interim adverse judgment rule, Tamara met her burden of establishing that Kevin cannot show that she lacked the requisite probable cause to have prosecuted the *Marvin* Action; and Kevin did not meet his responsive burden to allow the application of the fraud exception to the interim adverse judgment rule.

As we explain, because Kevin set forth facts that establish a prima facie application of the fraud exception, the court erred in applying the interim adverse judgment rule to conclude that Kevin did not establish the requisite probability of prevailing on his claim. Accordingly, we will reverse the judgment and remand with directions that the court vacate its order granting Tamara's anti-SLAPP motion and enter a new order denying the motion.

## II. FACTUAL AND PROCEDURAL BACKGROUND

As we explain at part III., *post*, the issues in the present appeal all arise from the second stage of the anti-SLAPP proceedings, during which the court determines whether the plaintiff can establish a probability of prevailing on the merits of the claim. (§ 425.16, subd. (b).) At this stage, "the court may consider affidavits, declarations, and their equivalents if it is reasonably possible the proffered evidence set out in those statements will be admissible at trial." (*Sweetwater*, *supra*, 6 Cal.5th at p. 949; see § 425.16, subd. (b)(2).) "Conversely, if the evidence relied upon *cannot* be admitted at

4

trial, because it is categorically barred or undisputed factual circumstances show inadmissibility, the court may not consider it in the face of an objection." (*Sweetwater*, at p. 949.)

In the present case, the parties rely on the following evidence contained in the record on appeal: a declaration from Tamara's attorney; a declaration from Kevin; various exhibits introduced by the two declarations; and Kevin's amended verified complaint in this malicious prosecution action (verified complaint). Because the record on appeal does not contain any evidentiary objections (or rulings denying the admission of any proffered evidence), we consider all of the evidence submitted to the trial court (see *Sweetwater*, *supra*, 6 Cal.5th at p. 949; *Gallagher v. Connell* (2004) 123 Cal.App.4th 1260, 1268 (*Gallagher*) [objections to evidence not made in the trial court's anti-SLAPP proceedings are forfeited on appeal[3]])—as have the parties in their appellate briefing.

A.       *The* Marvin *Action: Tamara v. Kevin (Dec. 2013 - July 2015)*

Tamara and Kevin lived together for 23 years, from a date in 1989 until May 2012. Kevin proposed marriage in May 1990; the parties married in April 1997 and separated in May 2012; and Tamara filed for divorce in December 2012. According to Kevin, prior to their marriage he was a "wealthy m[a]n" and had "considerable premarital

_____

[3]       In *Gallagher*, in the trial court, the anti-SLAPP plaintiff objected to a newspaper article on the grounds it "was 'no[t] admissible' and 'lack[s] authentication.' " (*Gallagher*, *supra*, 123 Cal.App.4th at p. 1266.) Because such objections are "too general to include the objection [that the evidence] calls for hearsay," a hearsay objection to the newspaper article was not preserved for appeal. (*Id.* at p. 1268.) Thus, the appellate court, like the trial court, considered the newspaper article as part of the defendant's showing of a probability of prevailing on plaintiff's slander claim.

separate property"; and many tens of millions of dollars of cash and property are at issue in the parties' marital dissolution action.

In December 2013, Tamara filed the *Marvin* Action. As relevant to this appeal, Tamara alleged that Kevin breached an express oral contract—entered into within six months of having met her—to take care of her for the rest of her life and to give her half of everything he owned, whether acquired before or after meeting her.[4] Kevin generally denied the allegations in Tamara's complaint and alleged, among many affirmative defenses, that "[Tamara] is estopped from seeking relief . . . due to her own acts or omissions with reference to the subject matter of the Complaint" (equitable estoppel defense).

The parties litigated the *Marvin* Action for approximately three and a half years. During that time, in early 2015, the trial court denied Kevin's motion for summary judgment. Kevin's position was that he never made any agreement with Tamara regarding his assets. In contrast, in her declaration in opposition to Kevin's motion, Tamara testified that, when Kevin proposed marriage in May 1990, he expressly

---

4       According to Kevin, the principal allegation is found at paragraph 8 of Tamara's complaint in the *Marvin* Action and provides in part as follows: " 'Tamara and Kevin orally agreed that if Tamara would act as Kevin'[s] companion, social and business partner, assistant, consultant and confidant to Kevin in connection with business, investment, property acquisitions, financial and family matters, then Kevin would share equally with Tamara any and all right, title, interest in and to any and all real and personal property, fine art, collectables, luxury automobiles, jewelry, net equity and business investments, investment interest, intellectual property, and all other assets and property rights which Kevin *did and was entitled thereafter to acquire or accumulate and* that Kevin would support Tamara financially *for the entire duration of her life*.' " (Kevin's italics.)

6

promised her half of all of the assets he acquired after they met in 1989. Describing the parties' factual presentations as establishing "a he said, she said case" in which the trial would be "a credibility contest," the court denied Kevin's summary judgment motion. More specifically, the court ruled that triable issues of fact existed as to the showing of both the mutual assent and the consideration to create the express contract alleged in the complaint by Tamara.

In July 2017, Tamara dismissed the *Marvin* Action without prejudice.[5]

B.    *The Malicious Prosecution Action: Kevin v. Tamara (Feb. 2018 - Present)*

In February 2018, Kevin initiated the malicious prosecution action against Tamara. In the verified complaint, Kevin testified that the *Marvin* Action was terminated in his favor and that Tamara brought the *Marvin* Action without probable cause and with malice, causing him money damages.

In due course, Tamara filed an anti-SLAPP motion. Consistent with the requirements of the anti-SLAPP statute, which we describe in greater detail at the beginning of part III., *post*, Tamara argued both that her claims in the *Marvin* Action arose from constitutionally protected activity and that there was a probability she would prevail on those claims. (§ 425.16, subd. (b).) In this latter regard, Tamara contended (1) that an application of the interim adverse judgment rule—based on the court's denial of Kevin's summary judgment motion in the *Marvin* Action—established the requisite probable cause for filing and prosecuting the *Marvin* Action, and (2) that the fraud

---

5    There has been no suggestion that the dismissal *without prejudice* was anything other than a "favorable termination" for purposes of Kevin's malicious prosecution action.

exception did not apply. Anticipating Kevin's opposition, Tamara suggested that the denial of Kevin's summary judgment motion in the prior action was not " 'induced by materially false facts submitted in opposition' " to the motion. (Quoting *Roberts v. Sentry Life Insurance* (1999) 76 Cal.App.4th 375, 384 (*Roberts*).)

Kevin opposed Tamara's anti-SLAPP motion. Without questioning Tamara's constitutional right to petition (§ 425.16, subd. (b)(1)), Kevin limited his opposition to arguing that, by the evidence he submitted, he established the requisite probability of prevailing on the merits of his malicious prosecution claim. More specifically, Kevin argued that the evidence he submitted established a prima facie case of malicious prosecution that, if believed by the trier of fact, would result in a judgment in his favor. As relevant to the issues in this appeal, Kevin presented two independent arguments: (1) to the extent the interim adverse judgment rule applied to establish Tamara's probable cause to have brought her claim for breach of an express oral agreement, Kevin presented evidence of a prima facie case to apply the fraud exception to the interim adverse judgment rule; and, regardless of the applicability of the interim adverse judgment rule or the fraud exception, (2) Kevin presented evidence of a prima facie case to establish his affirmative defense that Tamara was equitably estopped from claiming any interest in Kevin's premarital separate property.

Tamara filed a reply. With regard to the first issue—i.e., the presumption of probable cause for Tamara to prosecute the *Marvin* Action—she argued that Kevin did not meet his evidentiary burden of establishing the fraud exception to the interim adverse judgment rule. With regard to the second issue—i.e., the consideration of Kevin's

8

equitable estoppel defense to Tamara's claims in the *Marvin* Action—Tamara argued: California law does not allow a malicious prosecution plaintiff (here, Kevin) to prove his case based on his affirmative defense to the claim in the prior action (here, the *Marvin* Action); and, even if the law allowed such proof, here Kevin did not meet his burden of presenting evidence of a prima facie case.

Following hearing, the court granted Tamara's anti-SLAPP motion, striking the verified complaint. As to the presumption of probable cause for Tamara to prosecute the *Marvin* Action, the court ruled as follows: An application of the interim adverse judgment rule (based on the denial of Kevin's summary judgment motion in the *Marvin* Action) established the requisite probable cause for Tamara to have brought the *Marvin* Action; and the fraud exception did not apply, because the evidence Kevin presented did not "*establish*[]" that Tamara's declaration in opposition to his summary judgment motion was "false or perjured." (Italics added.) As to Kevin's prima facie case in support of his equitable estoppel defense to Tamara's claims in the *Marvin* Action, the court did not reach the merits, ruling only that "Kevin fail[ed] to provide any authority allowing a malicious prosecution plaintiff [Kevin] to establish lack of probable cause based on an un-litigated affirmative defense in the underlying action."

Consistent with its August 2018 order granting Tamara's motion and striking the complaint, in September 2018 the court entered a judgment against Kevin. Kevin timely appealed in October 2018. In his opening brief, Kevin tells us that the trial court "modified the Judgment on December 7, 2018"—which was more than a month after

9

Kevin's appeal from the judgment—"to award Tamara $28,619.00 in attorney's fees and $765 for costs."

## III. DISCUSSION

Section 425.16, subdivision (b)(1) provides in full: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."

In applying this statute, the court generally is required to engage in a two-step process. " 'First, the defendant must establish that the challenged claim arises from activity protected by section 425.16.' " (*Sweetwater*, *supra*, 6 Cal.5th at p. 940.) " 'If the defendant makes the required showing, the burden shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability of success.' " (*Ibid.*) " 'Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute.' " (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 820 (*Oasis West*).)

Here, as to the first prong, there is no disagreement. Kevin's malicious prosecution claim arises from an act in furtherance of Tamara's constitutional right of petition, which she exercised when pursuing the *Marvin* Action. (See *Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 734-735 ["by its terms, section 425.16

10

potentially may apply to every malicious prosecution action, because every such action arises from an underlying lawsuit, or petition to the judicial branch"; "every Court of Appeal that has addressed the question has concluded that malicious prosecution causes of action fall within the purview of the anti-SLAPP statute"].)

Thus, all that is at issue in this appeal is the second prong; i.e., whether the trial court erred in determining that Kevin failed to demonstrate the requisite minimal merit of his claim by establishing a probability of success in proving that Tamara maliciously brought her cause of action for breach of an express oral agreement in the *Marvin* Action. (See *Oasis West*, *supra*, 51 Cal.4th at p. 820 ["If the plaintiff [opposing the anti-SLAPP motion] 'can show a probability of prevailing on *any part of its claim,* the cause of action is not meritless' and will not be stricken"]; *Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 292 (*Soukup*) [a cause of action for malicious prosecution " 'lies when but one of alternate theories of recovery is maliciously asserted' "].) Because of how Tamara presented her anti-SLAPP motion, all that is at issue in this appeal is whether the court erred in determining that Kevin failed to demonstrate the merit of his claim by establishing a probability of success in proving one element of his claim for malicious prosecution—i.e., *whether Tamara lacked probable cause* to bring her cause of action for breach of an express oral agreement in the *Marvin* Action.[6]

---

[6] To establish a cause of action for malicious prosecution, the malicious prosecution plaintiff must demonstrate that the prior action was "(i) initiated or maintained by, or at the direction of, the defendant, and pursued to a legal termination in favor of the malicious prosecution plaintiff; (ii) *initiated or maintained without probable cause*; and (iii) initiated or maintained with malice." (*Parrish*, *supra*, 3 Cal.5th at p. 775, italics

Importantly—indeed, outcome determinative in this appeal—in deciding whether Kevin (i.e., the plaintiff opposing the anti-SLAPP motion) demonstrated the requisite probability of success for purposes of section 425.16, subdivision (b)(1), " '[t]he court does not weigh evidence or resolve conflicting factual claims. Its inquiry is limited to whether [Kevin] has stated a legally sufficient claim *and made a prima facie factual showing sufficient to sustain a favorable judgment*. It accepts [Kevin]'s evidence as true, and evaluates [Tamara]'s showing only to determine if it defeats [Kevin]'s claim as a matter of law.' " (*Sweetwater*, *supra*, 6 Cal.5th at p. 940, italics added; accord, *Wilson*, *supra*, 28 Cal.4th at p. 821 [malicious prosecution plaintiff's opposition to anti-SLAPP motion must demonstrate the complaint is " 'supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited' "].) In doing so, the court "must draw 'every legitimate favorable inference' from the [anti-SLAPP] plaintiff's evidence." (*Cuevas-Martinez v. Sun Salt Sand, Inc.* (2019) 35 Cal.App.5th 1109, 1117 (*Cuevas-Martinez*).) After application of these standards, " ' "[c]laims with the requisite minimal merit may proceed." ' " (*Sweetwater*, at p. 940.)

We review de novo the grant of an anti-SLAPP motion. (*Sweetwater*, *supra*, 6 Cal.5th at p. 940.) In exercising our independent judgment, we "may consider affidavits, declarations, and their equivalents if it is reasonably possible the proffered evidence set

added.) There is no issue in this appeal as to whether the *Marvin* Action was initiated by Tamara, was terminated in Kevin's favor, or was initiated with malice.

12

out in those statements will be admissible at trial."[7] (*Id.* at p. 949; see § 425.16, subd. (b)(2) [we consider "the pleadings, and supporting and opposing affidavits . . . upon which the liability or defense is based"].)

As we explain, the trial court erred in striking the verified complaint as a SLAPP. Kevin presented evidence sufficient to sustain a favorable factual finding that Tamara brought her claim for breach of an express oral agreement in the *Marvin* Action without probable cause. More specifically, Kevin presented evidence sufficient to establish a prima facie showing of an application of the fraud exception to the interim adverse judgment rule, thereby defeating the presumption of probable cause to bring Tamara's claim based on the court's denial of Kevin's summary judgment motion in the *Marvin* Action.[8] Thus, we will reverse the judgment and remand with directions to vacate the order granting Tamara's anti-SLAPP motion and enter a new order denying the

---

[7] "Conversely, if the evidence relied upon cannot be admitted at trial, because it is categorically barred or undisputed factual circumstances show inadmissibility, the court may not consider it *in the face of an objection*"; and in the event of a timely evidentiary objection, "the plaintiff may attempt to cure the asserted defect or demonstrate the defect is curable." (*Sweetwater*, *supra*, 6 Cal.5th at p. 949, italics omitted and added.) In the present appeal, Tamara did not object to evidence during the anti-SLAPP proceedings; thus, all of the evidence Kevin submitted in opposition to the motion was before the trial court and will be considered in this appeal. (*Gallagher*, *supra*, 123 Cal.App.4th at p. 1268 [" 'incompetent hearsay admitted *without objection* is sufficient to sustain a finding or judgment' "].)

[8] As we explain at part III.B., *post*, this reasoning will establish that Kevin met his responsive burden under prong two of the anti-SLAPP statute. (§ 425.16, subd. (b)(1).) Accordingly, we will not reach—and, thus, we express no opinion on—Kevin's alternative argument that his prima facie showing of the equitable estoppel defense established the requisite probability that he would prevail on his claim that Tamara lacked probable cause to bring the *Marvin* Action.

motion. Finally, because Kevin has not provided a record, legal authority, or argument from which we can make a ruling as to an award of postjudgment attorney fees and costs, we do not reach the issue.

A.    *The Fraud Exception to the Interim Adverse Judgment Rule*

In prosecuting a claim for malicious prosecution, the plaintiff must establish, among other elements, the defendant's lack of probable cause to have brought the prior action. (*Parrish*, *supra*, 3 Cal.5th at p. 775; see fn. 6.) "[T]he existence of probable cause is a question of law to be determined as an objective matter" (*Parrish*, at p. 776) by deciding whether " ' "any reasonable attorney would agree" ' " that the prior action was " ' "totally and completely without merit" ' " (*Wilson*, *supra*, 28 Cal.4th at p. 817). " 'A litigant will lack probable cause for his action either if he relies upon facts which he has no reasonable cause to believe to be true, or if he seeks recovery upon a legal theory which is untenable under the facts known to him.' " (*Soukup*, *supra*, 39 Cal.4th at p. 292; see *Parrish*, at p. 776.)

Historically, California courts have long held that victory in the trial court, even if reversed on appeal, conclusively establishes the requisite probable cause to have brought the prior action. (*Holliday v. Holliday* (1898) 123 Cal. 26, 32 ["when a person is charged before a competent court having jurisdiction of the matter, and is tried and found guilty, the judgment rendered, unless it is shown to have been obtained by means of fraud, is *conclusive evidence of probable cause for making the charge*, even though it is afterward held to be unauthorized, and reversed on appeal"; italics added]; *Carpenter*, *supra*, 153 Cal. at p. 218; *Wilson*, *supra*, 28 Cal.4th at p. 817.) The rationale is that claims which

14

succeed after an adversary hearing on the merits, *even if later reversed*, " 'are not so lacking in potential merit that a reasonable attorney or litigant would necessarily have recognized their frivolousness.' " (*Parrish*, *supra*, 3 Cal.5th at p. 776; accord, *Wilson*, at pp. 817-818; *Carpenter*, at p. 218; *Holliday*, at p. 32.)  That is because, unless the initial success was procured by certain improper means (which we discuss *post*), the claims "cannot be 'totally and completely without merit.' " (*Parrish*, at p. 776; accord, *Wilson*, at pp. 817-818; *Carpenter*, at p. 218; *Holliday*, at p. 32.)

This standard, known as the interim adverse judgment rule, also applies when the initial victory in the trial court is a defense motion for summary judgment—namely, when the prior action is terminated in favor of the defendant (i.e., the malicious prosecution plaintiff), yet during the pendency of the prior action, the court denied a defense motion for summary judgment.  (*Parrish*, *supra*, 3 Cal.5th at p. 784; *Wilson*, *supra*, 28 Cal.4th at p. 819; see *Hutton v. Hafif* (2007) 150 Cal.App.4th 527, 550 [a "well[-]established rule of law applicable to a malicious prosecution complaint [is] that the denial of a summary judgment motion in the underlying action establishes probable cause to file that lawsuit"].)  "Denial of a defense summary judgment motion on grounds that a triable issue exists . . . , while falling short of a determination of the merits, establishes that the plaintiff has substantiated, or can substantiate, the elements of his or her cause of action with evidence that, if believed, would justify a favorable verdict." (*Wilson*, at p. 824.)  "A trial court's conclusion that issues of material fact remain for trial 'necessarily impl[ies] that the judge finds at least some merit in the claim.  The claimant may win, if certain material facts are decided favorably.  This finding (unless

15

disregarded) compels [the] conclusion that there is probable cause, because probable cause is lacking only in the *total absence* of merit.' " (*Wilson*, at p. 819.)

The presumption under the interim adverse judgment rule is subject to an exception where the initial victory in the prior action—i.e., the denial of the defendant's summary judgment motion—"was induced by materially false facts submitted in opposition" to the motion. (*Roberts*, *supra*, 76 Cal.App.4th at p. 384.) That is because, "if denial of summary judgment was induced by materially false facts submitted in opposition, equating denial with probable cause might be wrong. Summary judgment might have been granted but for the false evidence."[9] (*Ibid.*) More than a century ago, our Supreme Court described this principle, known as the fraud exception to the interim adverse judgment rule, as follows: "Certainly, if a man has procured an unjust judgment by the knowing use of false and perjured testimony, he has perpetrated a great private wrong against his adversary. . . . [T]he general rule now is, 'that if the declaration or complaint shows a conviction of the plaintiff, yet if it be averred that the conviction was procured by fraud, perjury or subornation of perjury, or other unfair conduct on the part of the defendant, the presumption of probable cause is effectually rebutted.' "[10]

---

9    In *Roberts*, *supra*, 76 Cal.App.4th at page 384, the court did not rule that the allegedly "materially false facts" in that case prevented application of the interim adverse judgment rule. Thus, *Roberts* does not provide a standard or guideline for when this exception might defeat application of the rule.

10    Neither *Carpenter*, *supra*, 153 Cal. at page 218, nor any other case we have found discusses, let alone applies, what must be shown to establish whether "unfair conduct on the part of the defendant" rebuts the presumption associated with the interim adverse judgment rule. (Cf. *Parrish*, *supra*, 3 Cal.5th at p. 783 ["other unfair conduct" does *not*

16

(*Carpenter*, *supra*, 153 Cal. at p. 218 [malicious prosecution action following the reversal of a criminal conviction based on what the malicious prosecution plaintiff contended was defendants' presentation to the grand jury of "unlawfully procured false evidence"].)

Most recently, our Supreme Court explained the reason for an application of the fraud exception to the interim adverse judgment rule: "[W]hen a litigant relies on evidence that she knows to be false, she is not entitled to reap the benefits of the interim adverse judgment rule by deceiving a court into believing that her claim has merit." (*Parrish*, *supra*, 3 Cal.5th at p. 782.) In applying this standard, the focus should be on " 'the facts known to the [litigant]' accused of malicious prosecution." (*Ibid.*)

B.      *Application of the Fraud Exception to the Interim Adverse Judgment Rule in Tamara's Anti-SLAPP Motion*

In this appeal, both parties accept that the interim adverse judgment rule applies. Thus, under the rule, because the trial court in the *Marvin* Action denied Kevin's motion for summary judgment, Tamara is entitled to a presumption that probable cause existed for her to bring her claim for breach of an express oral agreement in that action. (See *Wilson*, *supra*, 28 Cal.4th at p. 820 [defeating a defense motion for summary judgment in the prior action "establishes probable cause to [have brought] the action, and precludes the maintenance of a subsequent malicious prosecution action"].) The only issue on appeal is whether Kevin rebutted this presumption—i.e., whether Kevin met his burden of establishing an application of the fraud exception to the interim adverse judgment rule,

include "inadvertent reliance on factual inferences that turn out to be unsupported at trial"].)

17

thereby defeating the presumption that probable cause existed for Tamara to bring her claim in the *Marvin* Action for breach of an express oral agreement.

For anti-SLAPP purposes of establishing a probability of prevailing on his malicious prosecution claim against Tamara, Kevin must present " 'a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by [Kevin] is credited.' " (*Wilson, supra,* 28 Cal.4th at p. 821; accord, *Sweetwater, supra,* 6 Cal.5th at p. 940; see § 425.16, subd. (b)(1).) To demonstrate the " ' "requisite minimal merit," ' " Kevin must establish a prima facie factual showing that Tamara lacked probable cause to bring her claim for breach of an express oral agreement in the *Marvin* Action. (*Sweetwater, supra,* 6 Cal.5th at p. 940.) Thus, in the *anti-SLAPP context,* with the use of the substantive *malicious prosecution law* at issue, the applicable standard requires Kevin to establish a prima facie factual showing that the fraud exception applies to the interim adverse judgment rule.[11] In our de novo review, we examine Kevin's testimony in the verified complaint and his declaration in opposition to Tamara's anti-SLAPP motion. We must determine whether, as Kevin argues, that evidence contains a *prima facie showing*—not, as argued by Tamara, *proof*—that Tamara knowingly submitted false evidence on which the court in the *Marvin* Action relied in

---

[11]     Upon such a showing, Tamara may still prevail *under anti-SLAPP law* if her showing " 'defeats [Kevin's] claim as a matter of law.' " (*Sweetwater, supra,* 6 Cal.5th at p. 940.) Here, however, that is not possible, since Tamara did not offer evidence or argument in an attempt to defeat Kevin's claim *as a matter of law.* Having presented her attorney's declaration and documents from the *Marvin* Action in the anti-SLAPP proceedings, Tamara relied only on the interim adverse judgment rule and the argument that Kevin did not meet his burden of proving the applicability of the fraud exception to the rule.

denying Kevin's summary judgment motion. (*Sweetwater*, *supra*, 6 Cal.5th at p. 940; *Wilson*, *supra*, 28 Cal.4th at p. 821.)

Initially, we consider the evidence presented to the court during the summary judgment proceedings in the *Marvin* Action. In her declaration in opposition to Kevin's motion, Tamara testified that, when Kevin proposed marriage in May 1990 (they did not marry for another seven years), he expressly promised her half of all of the assets he acquired after they met in 1989.[12]

What follows is direct and circumstantial evidence that Kevin relies on (from the verified complaint and his declaration in opposition to Tamara's motion) to establish a prima facie showing that, at the time Tamara submitted her testimony of the express oral agreement to the court in the *Marvin* Action, she *knew* this testimony to be false:

- First and foremost is the direct evidence contained in Kevin's testimony that, when Tamara submitted her declaration in opposition to his summary judgment motion in the *Marvin* Action—in which she testified that, in May 1990, Kevin expressly promised her half of all the assets he acquired after they met in 1989—"Tamara knew the true facts regarding the ownership of Kevin's property[.]" These "true

---

12 Consistently, in her memorandum of points and authorities in opposition to Kevin's summary judgment motion in the *Marvin* Action, Tamara represented to the court: "Before marriage, Kevin made Tamara a promise that the property and income they acquired during their relationship belonged to both of them equally"; at or about the time Kevin proposed marriage in May 1990, "Kevin made Tamara a promise to share equally the property and income they acquired during the course of their relationship." As evidence of this latter statement, Tamara cited *her* declaration and *her* deposition testimony that she submitted in support of her opposition to Kevin's motion.

19

facts," Kevin further testified, were that "there was no agreement between Kevin and Tamara, express or implied, as alleged in the *Marvin* Action."

- Prior to the parties' marriage in April 1997, Kevin and Tamara met with a family lawyer. At that time, Kevin explained to Tamara: "I wanted my separate property to remain separate property after marriage. I wanted to know if I needed a prenuptial agreement to accomplish that objective." At the meeting, Kevin told the lawyer—and Tamara concurred—that "Kevin had substantial separate property assets and [Tamara] did not." Kevin explained to both the lawyer and Tamara not only "the nature and extent" of his premarital separate property, but also that virtually all of his separate property was held in trust. Based on the lawyer's advice (that Kevin did not need a prenuptial agreement to maintain the separate character of his premarital property if he kept it in trust and did not comingle it with community property or Tamara's separate property), Kevin testified that "Tamara left the lawyer's office with the decision having been made that there would be no prenuptial agreement. Kevin would maintain the separateness of his existing assets by keeping them in his Trust, or otherwise segregating them from any assets acquired after the marriage."

- Kevin testified: "Tamara never claimed her alleged fortune on a loan application or financial statement."

- Consistently, Kevin testified: "Tamara never suggested that I could not truthfully claim 100% of my income or assets on a financial statement or loan application;

nor did she suggest my income should be treated as anything but 100% mine for tax purposes."

- Kevin testified: "During the 25 years we were together, Tamara never said anything to me that suggested in any way that she believed she had an interest in my premarital separate property, let alone a 50% interest."

- Kevin testified that *not once* during the years they were together did either Tamara or Kevin ever "manifest[] a belief that Tamara had a right to half of everything . . . even though there were many occasions when they would have were Tamara's claim true." Kevin detailed at least 10 examples of such occasions, summarizing them as "statements and actions, whereby [Tamara] implicitly and explicitly acknowledged that she had no right or interest in or to Kevin's premarital assets[.]"

- Kevin testified: "[T]here is no written support for Tamara's [claimed interest in half of the assets Kevin acquired after they met.]"

- Kevin testified: "[T]here is powerful written evidence to contradict [Tamara's claimed interest in half of the assets Kevin acquired after they met.]" Kevin included eight examples of such statements written by Tamara.

- Kevin testified: "Tamara never complained that I was treating all of the property in my Trust as my own; [and] Tamara never created a similar, or any, trust, and never mentioned wanting to do so."

- Kevin testified as to various transactions—e.g., purchases and sales of real property, and the creation and amendment of a personal trust—from which a trier

21

of fact could infer Kevin had not previously agreed that he would share with Tamara half of the assets he acquired after they met.

- Finally, Kevin testified that, throughout the 23 years they lived together, "Tamara never told me she believed she had any interest in my assets."

Accepting " 'as true' " Kevin's evidence—and all favorable inferences therefrom (*Cuevas-Martinez*, *supra*, 35 Cal.App.5th at p. 1117)—and without " 'weigh[ing] evidence or resolv[ing] conflicting factual claims,' " we conclude that, for purposes of the anti-SLAPP statute, Kevin has " 'made a prima facie factual showing sufficient to sustain a favorable judgment.' " (*Sweetwater*, *supra*, 6 Cal.5th at p. 940; accord, *Wilson*, *supra*, 28 Cal.4th at p. 821.)  The " 'favorable judgment' " is one for malicious prosecution, and the " 'prima facie showing' " is Kevin's evidentiary showing (including inferences) that Tamara lacked probable cause to bring her cause of action for breach of express oral agreement in the *Marvin* Action.  (*Parrish*, *supra*, 3 Cal.5th at p. 775 [in part, a cause of action for malicious prosecution requires a showing that the prior action was "initiated or maintained without probable cause"].)  Under substantive malicious prosecution law, Kevin based his prima facie showing that Tamara lacked probable cause on the application of the fraud exception to the interim adverse judgment rule.  (See *Parrish*, *supra*, 3 Cal.5th at p. 782; *Carpenter*, *supra*, 153 Cal. at p. 218.)

Tamara's arguments on appeal do not convince us otherwise.

First, Tamara argues that "the standard for [a malicious prosecution defendant's] probable cause [to have brought the prior action] is 'lenient.' "  (Quoting *Wilson*, *supra*, 28 Cal.4th at p. 817.)  In part, Tamara continues, this leniency is because malicious

22

prosecution is a " 'disfavored' cause of action" due to its " 'potential to impose an undue "chilling effect" on the ordinary citizen's willingness . . . to bring a civil dispute to court.' " (Quoting *Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 872.) We do not disagree with Tamara's authority, and Tamara is not precluded from relying on this authority when the trial court considers the merits of Kevin's *claim for malicious prosecution*. Here, however, we are considering *an anti-SLAPP motion*, and "[t]o survive anti-SLAPP scrutiny, a plaintiff need only establish their cause of action has 'minimal merit.' " (*Cuevas-Martinez, supra*, 35 Cal.App.5th at p. 1117, quoting *Navellier v. Sletten* (2002) 29 Cal.4th 82, 89; accord, *Sweetwater, supra*, 6 Cal.5th at p. 940; *Oasis West, supra*, 51 Cal.4th at p. 825; *Baral v. Schnitt* (2016) 1 Cal.5th 376, 385.) That is because the anti-SLAPP procedure is only intended to "weed[] out, at an early stage, *meritless* claims arising from protected activity." (*Baral*, at p. 384.) Kevin's prima facie showing meets this " 'minimal merit' " standard, and on the record before us Kevin's malicious prosecution cause of action is not "*meritless*" under applicable *anti-SLAPP criteria*.

Next, Tamara suggests that, by failing to submit the declaration Tamara filed in opposition to Kevin's summary judgment motion in the *Marvin* Action—i.e., the testimony that Kevin claims contains the false or misleading evidence that forms the basis of his application of the fraud exception to the interim adverse judgment rule— Kevin failed to establish a prima facie showing. We disagree. We are relying on *Kevin's declaration* (in opposition to Tamara's anti-SLAPP motion in this action) in which *Kevin testified* as to the contents of Tamara's declaration in the *Marvin* Action. According to Tamara, "Kevin's generalized description of what Tamara stated is insufficient," because

23

"[w]here allegations of fraud or perjury are involved, a court needs to evaluate the actual documents with actual statements, to determine if Kevin established a prima facie case." Notably, Tamara provides no authority for her position. To the contrary, since Kevin's testimony as to the contents of Tamara's earlier declaration is not "categorically barred" from admissibility or "undisputed factual circumstances" do not show inadmissibility (*Sweetwater*, *supra*, 6 Cal.5th at p. 949)—and because *Tamara did not object in the trial court* to admissibility (*Gallagher*, *supra*, 123 Cal.App.4th at p. 1268)—Kevin's testimony is properly before us, and we have considered it.[13]

Tamara further argues that Kevin did not meet his burden of establishing an application of the fraud exception to the interim adverse judgment rule, because *independent of Tamara's declaration testimony in the* Marvin *Action*, the record contains evidence that created a triable issue of material fact to have denied Kevin's summary judgment motion. We reject this argument, since Tamara has not presented us with a sufficient record of the summary judgment proceedings in the *Marvin* Action for us to determine alternative bases on which the motion could have been denied.[14]

---

[13]    In addition, we note that Tamara has not denied Kevin's recitation of the testimony from her declaration in the *Marvin* Action.

[14]    For example, based on Tamara's presentation, we do not know whether we have the universe of documents that the parties submitted to the court during the summary judgment proceedings in the *Marvin* Action. Moreover, we do not know the specific evidence that was before the court at the time it denied Kevin's motion; the order denying the motion indicates that the court sustained six of Kevin's evidentiary objections to evidence submitted by Tamara, but only lists the exhibit numbers without identifying the exhibits.

24

Tamara next contends that the fraud exception to the interim adverse judgment rule is inapplicable here, because Kevin failed to submit evidence that, at the time she submitted her declaration in opposition to Kevin's summary judgment motion in the *Marvin* Action, Tamara *knew* that any statement was false. We disagree. Kevin relies on his testimony that, when Tamara submitted her declaration—in which she testified that, in May 1990, Kevin expressly promised her half of all the assets he acquired after they met in 1989—"Tamara knew the true facts regarding the ownership of Kevin's property[.]" This prima facie showing is sufficient. In any event, we are not persuaded by Tamara's assertion in her appellate brief that "[she] does not concede that her statement in her declaration was false or incorrect." Since we must accept Kevin's evidence " 'as true' " without " 'weigh[ing] evidence or resolv[ing] conflicting factual claims' " for prong two anti-SLAPP purposes (*Sweetwater*, *supra*, 6 Cal.5th at p. 940; accord, *Wilson*, *supra*, 28 Cal.4th at p. 821), we have no reason to consider Tamara's unsworn denial by her attorney in the briefing, of Kevin's testimony. (See *In re Zeth S.* (2003) 31 Cal.4th 396, 414, fn. 11 ["unsworn statements of counsel [in an appellate brief] are not evidence"].)

We also disagree with Tamara's related argument that Kevin did not meet his burden of presenting a prima facie case that Tamara lacked probable cause to bring the *Marvin* Action since, according to Tamara, "[t]he evidence he submitted in opposition, and relies on now in the AOB, is subject to, at most, conflicting inferences." Indeed, contrary to Tamara's contention, in determining whether Kevin met his prong two burden, we are *required* to "draw 'every legitimate favorable inference' from the

25

plaintiff's evidence." (*Cuevas-Martinez*, *supra*, 35 Cal.App.5th at p. 1117.) Tamara's suggestion otherwise is unsupported by authority, and we reject it. Tamara argues that, if Kevin is allowed to "create a prima facie case for malicious prosecution by presenting evidence that is subject to, at best, conflicting inferences, that would diminish what a malicious prosecution claim is meant to be." Tamara again loses focus of the substantive law to be applied in this appeal. This is *an anti-SLAPP appeal*, where, for purposes of determining whether the plaintiff has demonstrated the requisite probability of success, we accept Kevin's evidence " 'as true,' " we do not" 'weigh evidence or resolve conflicting claims' " from Tamara (*Sweetwater*, *supra*, 6 Cal.5th at p. 940; accord, *Wilson*, *supra*, 28 Cal.4th at p. 821), and we draw all inferences in Kevin's favor (*Cuevas-Martinez*, at p. 1117).[15] Any arguments Tamara may have as to Kevin's attempts to "diminish what a malicious prosecution claim is meant to be" may be presented when Kevin attempts to prove the allegations in his *substantive claim for malicious prosecution*.

---

[15] The trial court also appears to have conflated the standards to be applied in anti-SLAPP proceedings with the standards to be applied in proving a claim for malicious prosecution. After setting forth the proper standard under which to analyze Kevin's prong two showing, the court (1) ruled that "none of the evidence Kevin relies on establishes Tamara's declaration as false or perjured," and then (2) explained why the evidence Kevin presented is nothing more than "a 'he said, she said' situation," pursuant to which Kevin cannot overcome the "relatively low threshold required for establishing probable cause" for having filed the prior action. The standards recited by the trial court apply, if at all, in proceedings where the malicious prosecution plaintiff must *prove* the elements of the cause of action. Here, in contrast, we are reviewing anti-SLAPP prong two proceedings, where the applicable standard is whether the malicious prosecution plaintiff *presented evidence of a prima facie case* of the elements of the cause of action. (*Sweetwater*, *supra*, 6 Cal.5th at p. 940; *Wilson*, *supra*, 28 Cal.4th at p. 821.)

26

Finally, Tamara complains that Kevin's evidentiary showing does not establish a prima facie showing of the elements of *the crime* of perjury as defined at Penal Code section 118.[16] Such a showing is not necessary. The Supreme Court long ago held that fraud or perjury " 'or other unfair conduct' " could preclude application of the interim adverse judgment rule. (*Carpenter*, *supra*, 153 Cal. at p. 218.) We have applied the fraud exception to the interim adverse judgment rule based on the standard set forth in *Roberts*, *supra*, 76 Cal.App.4th at page 384 (the exception applies "if denial of summary judgment [in the prior action] was induced by materially false facts submitted in opposition"), as recently described by our Supreme Court in *Parrish*, *supra*, 3 Cal.5th at page 782 (the exception applies when, in opposition to a defense summary judgment motion in the prior action, "a litigant relies on evidence that she knows to be false"). At a minimum, an application of the exception requires that the person making the allegedly false statements " 'knew, or, in the exercise of reasonable diligence should have known, that his representations were false.' " (*Ibid.*) Whether Kevin can prove this at trial is not before us; our ruling is based solely on Kevin's prima facie showing of evidence that Tamara knew, or reasonably should have known, that her declaration testimony in the *Marvin* Action regarding an express oral agreement (to share equally in all the assets Kevin acquired after the parties met in 1989) was false.

For the foregoing reasons, Kevin met his burden of establishing that the trial court erred in ruling that he did not present a prima case for the application of the fraud

---

16      A person is guilty of perjury if he or she "willfully states as true any material matter which he or she knows to be false[.]" (Pen. Code, § 118, subd. (a).)

exception to the interim adverse judgment rule. Based on our de novo review, we conclude that, for purposes of prong two of the anti-SLAPP statute (§ 425.16, subd. (b)(2)), if we credit the evidence that Kevin submitted in opposition to Tamara's anti-SLAPP's motion, including favorable inferences from that evidence (*Cuevas-Martinez*, *supra*, 35 Cal.App.5th at p. 1117), Kevin set forth a sufficient prima facie showing of facts that he will prevail in proving that Tamara lacked probable cause to initiate or maintain the *Marvin* Action. (*Sweetwater*, *supra*, 6 Cal.5th at p. 940.) By this ruling—indeed, by any statement contained in this opinion—we express no view as to whether Kevin will or will not be able to prove to the satisfaction of a trier of fact any of the three elements of his cause of action for malicious prosecution. (§ 425.16, subd. (b)(3).[17])

C.      *Attorney Fees and Costs*

In his opening brief, Kevin tells us that the trial court "modified the Judgment on December 7, 2018 *to award Tamara $28,619.00 in attorney's fees and $765 for costs*" and that his appeal is "from an Order granting a Motion to Strike under . . . § 425.16, *and awarding* [*Tamara*] *attorney's fees and costs*, and from the Judgment entered thereon." (Italics added.) Consistently, in his appellate briefing, Kevin asks that we reverse the "Order . . . *awarding attorney's fees and costs* and the Judgment entered thereon; and to

---

[17]      "If the court determines that the plaintiff has established a probability that he or she will prevail on the claim, neither that determination nor the fact of that determination shall be admissible in evidence at any later stage of the case, or in any subsequent action, and no burden of proof or degree of proof otherwise applicable shall be affected by that determination in any later stage of the case or in any subsequent proceeding." (§ 425.16, subd. (b)(3).)

remand this case to the trial court with instructions to enter an Order . . . *vacating the award of attorney's fees and costs*." (Italics added.) However, because Kevin's presentation on appeal is inadequate, we decline to consider the issue without reaching its merits.

The record on appeal does not contain an order awarding fees and costs (or a register of actions from which we might determine the postjudgment proceedings in the trial court), and Kevin acknowledges that no fees or costs had been awarded at the time he appealed from the judgment in October 2018. Further, the parties' briefs do not contain any arguments as to attorney fees or costs.

"[T]he burden is on an appellant to demonstrate, *on the basis of the record presented to the appellate court*, that the trial court committed an error that justifies reversal[.]" (*Jameson v. Desta* (2018) 5 Cal.5th 594, 609, italics added; accord, *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) Where an appellant fails to present argument or legal authority, he or she forfeits appellate consideration of the issue. (*Atempa v. Pedrazzani* (2018) 27 Cal.App.5th 809, 830; Cal. Rules of Court, rule 8.204(a)(1)(B) [each point in a brief must be supported "by argument and, if possible, by citation of authority"].)

In this appeal, Kevin has not provided a record, legal authority, or argument from which this court can make a ruling regarding any postjudgment award of attorney fees or costs in this action. Accordingly, we neither consider nor express a view regarding attorney fees or costs.

29

## IV.  DISPOSITION

The judgment is reversed and the matter is remanded to the superior court with directions to vacate its order granting Tamara's anti-SLAPP motion and enter a new order denying the motion.  Kevin is entitled to his costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(2).)


IRION, J.

WE CONCUR:


O'ROURKE, Acting P. J.


DATO, J.