Filed 7/27/22  Bluford v. Timm CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| DEREK BLUFORD,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>AARON TIMM<br><br>        Defendant and Respondent. | A160614<br><br>(Marin County<br>Super. Ct. No. CIV1904809) |

Aaron Timm sued Derek Bluford and a few other parties in Sacramento County Superior Court in connection with business transactions involving Timm's business and two companies owned by or associated with Bluford. Timm's lawsuit ended after the trial court granted defendants' special motion to strike under the anti-SLAPP statute[1] as to Timm's deceptive business practices claim, and later dismissed the remaining claims after Timm failed to amend his complaint to allege that his business had assigned its rights to permit him to pursue those claims.

After the trial court dismissed Timm's lawsuit, Bluford sent an email to Timm stating that it was now Bluford's "turn" and that Timm "better get ready."  Bluford then filed a malicious prosecution action in Marin County

---

[1] Code of Civil Procedure section 425.16.  Unless otherwise indicated, all statutory references are to the Code of Civil Procedure.

1

Superior Court against Timm and the attorney who represented Timm in the first lawsuit. This time, it was Timm who filed an anti-SLAPP motion, which the trial court granted. Bluford filed this appeal, and we will affirm.

## BACKGROUND

### A.    The Parties' Business Dealings

Timm's underlying lawsuit against Bluford arose from a business transaction that began in 2014. Neither party has made the underlying complaint a part of this record.[2] From Timm's declaration in support of his special motion to strike the later filed malicious prosecution lawsuit that is now before us, we learn the following about the parties' business dealings that led to the underlying lawsuit.

In 2014, California Legal Pro's Incorporated (CLP), a business owned by Bluford and his wife, Sarah Morell, offered to sell some of its assets to Auburn Capital, Inc., a business owned by Timm. CLP described itself as offering legal services bundled into "Package[s]" at set prices, such as an "Eviction Package" for landlords attempting to evict tenants. Transworld Business Advisors (Transworld) served as a business broker for CLP.

Timm stated in his declaration that during negotiations, Transworld provided Timm with documents stating that CLP had generated gross revenue of approximately $375,000 and a cash flow of approximately $94,000 in the prior year. Based on those representations, Auburn Capital, Inc. purchased certain assets of CLP. Shortly after this acquisition, Timm

---

[2] Bluford provided only a one-page excerpt of the complaint showing some of the allegations supporting Timm's cause of action for deceptive business practices. But the parties do not dispute that Timm's action arose from wrongdoing that occurred in 2014.

2

discovered that CLP's business produced no profit and generated significant monthly losses.

In April 2016, after Timm confronted Bluford regarding the misrepresentations, Auburn Capital, Inc. sold the CLP business to Quicklegal Practice Management, Inc. (Quicklegal or QPMI), another company associated with Bluford. As part of this sale, Quicklegal agreed to give Auburn Capital, Inc. 1 percent of the equity in Quicklegal and 10 percent of all profits earned by the CLP business. Quicklegal also agreed to pay Auburn Capital, Inc. $220,000 if it sold the CLP business to a third party.

Timm further stated in his declaration that after Auburn Capital, Inc. sold the CLP business to Quicklegal, it ceased operations and assigned its rights against Bluford and Quicklegal to Timm.

According to Timm, in October 2016, he discovered that Lawtova, Inc. (Lawtova) appeared to be operating the CLP business. When he contacted Bluford about this, Bluford acknowledged that Quicklegal owed Auburn Capital, Inc. $220,000 pursuant to the terms of the 2016 sale of CLP.

In December 2016, Bluford's counsel, Cyrus Zal, emailed Timm stating, "Derek and I want you to know that we recognize your entitlement to reimbursement for your selling the legal services business to QPMI." The email admitted that "QPMI and its [] legal services department never generated a profit from the time the business was acquired from you to the present." Zal claimed in the email, however, that Quicklegal did not sell the CLP business to a third party; it simply was doing business under the name Lawtova, Inc. Nonetheless, he stated that "QPMI and Lawtova, Inc. both recognize that you are entitled to receive $220,000 for your sale to QPMI of the legal services business."

3

**B. The Underlying Lawsuit**

In July 2017, Timm filed a lawsuit in Sacramento County Superior Court against Quicklegal, Lawtova, Bluford, Morrell, and Zal (collectively, defendants), alleging that they failed to make the payment that was due pursuant to the terms of the 2016 sale of CLP (the underlying lawsuit). Timm alleged causes of action for breach of contract, negligent misrepresentation, fraud, conspiracy to commit fraud, conversion, negligence, and deceptive business practices pursuant to Business and Professions Code section 17500 (section 17500 claim). The parties do not dispute that Timm did not allege in his complaint that he was bringing the claims as Auburn Capital, Inc.'s assignee.

Defendants filed an anti-SLAPP motion as to Timm's section 17500 claim, which apparently arose from defendants' alleged unlawful business practices in raising funds from investors in alter ego corporations with undisclosed liabilities, misrepresenting the financial performance of corporations to prospective investors, and misappropriating funds from corporations. Defendants contended that this cause of action arose from their constitutional right to free speech and petition in connection with a public issue, and that Timm could not show a probability of prevailing on the claim because it was not adequately pled and Timm could not make a prima facie showing of the claim.

The court granted defendants' anti-SLAPP motion, finding that defendants had met their initial burden of showing that the cause of action arose from activity protected by section 425.16, and that Timm did not sufficiently plead his deceptive business practices claim or provide evidence in support of his burden under the second prong of the anti-SLAPP analysis to show a probability of prevailing on the claim.

4

Defendants' answer to Timm's complaint also asserted several affirmative defenses, including that Timm's claims were barred by section 367, which requires that every action be prosecuted by the real party in interest. In early 2019, defendants moved to dismiss the action on the ground that Timm was not the real party in interest and lacked standing. The court denied the motion, finding that based on Auburn Capital, Inc.'s assignment of its rights to Timm, "Timm has shown that he is the real party in interest." The court granted Timm leave to amend his complaint to allege that he was pursuing the action as Auburn Capital, Inc.'s assignee.

But Timm failed to amend his complaint, and the court dismissed the action in October 2019.

## C. Bluford's Malicious Prosecution Action

After the trial court dismissed Timm's complaint, Bluford sent an email to Timm stating that it was Bluford's "turn" and that Timm "better get ready." Bluford continued, "[e]ven if I bankrupt you and get nothing it's okay," and he prophesied that Timm's clients "will run" because of the lawsuit. Bluford also threatened to file a separate lawsuit against Timm's wife.

A couple of months later, Bluford filed a single cause of action complaint for malicious prosecution against Timm and Timm's attorney, Joseph Salama, based on the filing and prosecution of the complaint in the underlying action, and of "each and every cause of action therein alleged against [Bluford] . . . ."[3] Bluford alleged that Timm and Salama acted without probable cause in bringing the underlying action because Timm was

---

[3] Salama is not a party to this appeal, and so the allegations specific to him are not at issue.

not the real party in interest, Timm and Salama fabricated allegations against Bluford, and they lacked evidence to support Timm's allegations. Bluford further alleged that Timm and Salama acted maliciously by seeking to "strong arm" Bluford or Zal into paying a settlement to Timm, and because Timm brought the action due to his ill will towards Bluford.

Timm filed an anti-SLAPP motion to strike Bluford's complaint, arguing that Bluford's malicious prosecution action fell within the protection of the anti-SLAPP statute. He further contended that Bluford could not show a probability of prevailing on his malicious prosecution claim because the evidence does not show that Timm prosecuted the underlying action without probable cause and with malice. Rather, Timm argued, it was Bluford who acted with malice in bringing the malicious prosecution action. Timm also argued that Bluford could not defeat Timm's affirmative defenses of unclean hands and advice of counsel. Finally, Timm sought attorney fees in the event he prevailed on his anti-SLAPP motion. Bluford filed an opposition.

After a hearing, the trial court granted Timm's anti-SLAPP motion, finding that Bluford did not meet his burden of showing a probability of prevailing on his malicious prosecution claim. As to the probable cause element of his claim, the court found that Bluford failed to present any evidence supporting his argument that the assignment of interests by Auburn Capital, Inc. to Timm did not exist at the time of the underlying action, and that Timm presented evidence in opposition to Bluford's claim that Timm's deceptive business practices cause of action lacked probable cause. The trial court also found that Bluford failed to show a probability of prevailing on the malice element of his malicious prosecution claim because he failed to present evidence regarding Timm's subjective intent. The court

6

did not reach Timm's affirmative defenses.  The trial court granted Timm's request for attorney fees, awarding the requested amount of $6,305.

Bluford now appeals.[4]

## DISCUSSION

### A.    Standard of Review

"The Legislature enacted section 425.16 to prevent and deter 'lawsuits [referred to as SLAPP's] brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances.' (§ 425.16, subd. (a).)  Because these meritless lawsuits seek to deplete 'the defendant's energy' and drain 'his or her resources' [citation], the Legislature sought ' "to prevent SLAPPs by ending them early and without great cost to the SLAPP target" ' [citation].  Section 425.16 therefore establishes a procedure where the trial court evaluates the merits of the lawsuit using a summary judgment-like procedure at an early stage of the

---

[4] The record contains no judgment or order of dismissal.  Bluford appeals from the order granting Timm's anti-SLAPP motion.  Such orders are ordinarily appealable under sections 425.16, subdivision (i), and 904.1, subdivision (a)(13), except for those orders granting or denying a special motion to strike a malicious prosecution or abuse of process cause of action "arising from" a prior cause of action that was dismissed pursuant to an anti-SLAPP motion.  (§ 425.18, subds. (b)(1), (c).)  Here, Bluford's malicious prosecution claim arises in part from a cause of action that was dismissed pursuant to an anti-SLAPP motion, but it also arises from several claims the trial court dismissed on other grounds.  We need not address whether the order granting Timm's anti-SLAPP motion is appealable, however, because the order effectively dismisses Bluford's malicious prosecution action against Timm.  We will accordingly deem the order on the anti-SLAPP motion to incorporate a judgment of dismissal and will review that order.  (See *Melton v. Boustred* (2010) 183 Cal.App.4th 521, 527, fn. 1.)  We also grant the parties' respective requests for judicial notice.  (Evid. Code, § 459.)

7

litigation." (*Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 192.)

Under the anti-SLAPP statute, "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).)

The trial court engages in a two-step process to determine whether to grant an anti-SLAPP motion. (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 76.) First, the court decides whether a defendant has made a threshold showing that the challenged cause of action "aris[es] from" activity the statute protects. (*Ibid.*) If the defendant makes this threshold showing, the court must then determine whether the plaintiff has demonstrated a probability of prevailing on the claim. (*Navallier v. Sletten* (2002) 29 Cal.4th 82, 88.) We review de novo the granting of an anti-SLAPP motion. (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1067.)

## B.     First Step: Protected Activity

The first step of the anti-SLAPP analysis is to decide whether Bluford's malicious prosecution claim arises from protected activity. Here, there is no dispute that Timm's initiation of the underlying action is protected activity. (See *Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 735 (*Jarrow*).)

## C.     Second Step: Probability of Prevailing

The second step of the anti-SLAPP analysis requires us to decide whether Bluford has demonstrated a probability of prevailing on his

8

malicious prosecution claim. This step follows a summary judgment-like procedure. (*Sweetwater Union High School Dist. v. Gilbane Building Co.* (2019) 6 Cal.5th 931, 940.) We "consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (§ 425.16, subd. (b)(2).) However, " '[w]e do not weigh credibility, nor do we evaluate the weight of the evidence. Instead, we accept as true all evidence favorable to the plaintiff and assess the defendant's evidence only to determine if it defeats the plaintiff's submission as a matter of law.' " (*Grewal v. Jammu* (2011) 191 Cal.App.4th 977, 989.)

To establish a malicious prosecution claim, Bluford must show that Timm (1) initiated an action that was ultimately terminated in Bluford's favor, (2) brought or maintained that action without probable cause, and (3) initiated the action with malice. (*Bertero v. National General Corp.* (1974) 13 Cal.3d 43, 50.) Although Bluford asserts a single cause of action for malicious prosecution based on multiple causes of action in the underlying action, he need only show a probability of prevailing on the probable cause and malice elements as to one of Timm's claims to satisfy the second prong of the anti-SLAPP analysis. (See *Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 292, quoting *Bertero, supra,* 13 Cal.3d at p. 57, fn. 5.)[5]

To defeat an anti-SLAPP motion, Bluford must demonstrate that his malicious prosecution claim is both legally sufficient and supported by a

_____

[5] Bluford contends the trial court misconstrued the standard for determining whether a malicious prosecution plaintiff has satisfied prong two of the anti-SLAPP analysis because in granting Timm's anti-SLAPP motion, the court stated, "Plaintiff does not carry his burden to show that each of the underlying causes of action lacked probable cause." However, for the reasons discussed below, Bluford has not shown a probability of prevailing on the probable cause and malice elements for *any* of the underlying causes of action. Thus, any asserted error is harmless.

sufficient prima facie showing of facts to sustain a favorable judgment if his submitted evidence can be credited. (*Hecimovich v. Encinal School Parent Teacher Organization* (2012) 203 Cal.App.4th 450, 469.) Timm does not dispute the legal sufficiency of Bluford's malicious prosecution claim, and we conclude that the complaint adequately alleges the three elements of a malicious prosecution claim. (See *Olivares v. Pineda* (2019) 40 Cal.App.5th 343, 353, fn. 6 [explaining that the legal sufficiency threshold is about the adequacy of the allegations supporting the challenged causes of action].)

The parties also do not dispute that the underlying lawsuit was terminated in Bluford's favor when the trial court granted Bluford's anti-SLAPP motion to strike Timm's deceptive business practices claim and later dismissed the remaining claims. Thus, this appeal focuses on whether Bluford has met his burden to demonstrate a probability of prevailing on the elements of probable cause and malice, supported by a prima facie showing made with " 'competent and admissible evidence.' " (*Hecimovich v. Encinal School Parent Teacher Organization, supra*, 203 Cal.App.4th at p. 469.)

### 1. *Lack of Probable Cause*

Bluford argues that he has met his burden to demonstrate a likelihood of prevailing on the lack of probable cause element because at least some of the causes of action in Timm's complaint were not legally tenable.

To establish lack of probable cause, a malicious prosecution plaintiff must establish that no reasonable attorney would have considered the action legally tenable based on the facts known to Timm when he filed his complaint in the underlying action. (*Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 885–886.) Probable cause is determined objectively without reference to whether the defendant believed the claim was legally tenable. (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 817.) "Only

those actions that ' "any reasonable attorney would agree [are] totally and completely without merit" ' may form the basis for a malicious prosecution suit." (*Ibid.*, quoting *Sheldon Appel Co. v. Albert & Oliker, supra*, 47 Cal.3d at p. 885.)

We turn first to Timm's section 17500 claim, which alleged that defendants' unlawful business acts included raising funds from investors in alter ego corporations with undisclosed liabilities, misrepresenting the financial performance of corporations to prospective investors, and misappropriating funds from corporations where defendants are directors or officers. Bluford argues that Timm lacked probable cause to bring his deceptive business practices claim because he failed to present any evidence in support of his opposition to Bluford's anti-SLAPP motion to strike that claim in the underlying action, or in support of his motion for reconsideration of the order granting Bluford's motion.

Bluford cites as support for his argument *Mabie v. Hyatt* (1998) 61 Cal.App.4th 581 (*Mabie*). There, the malicious prosecution defendant (Hyatt) litigated the underlying fraud, conspiracy, malice and punitive damages claim against the malicious prosecution plaintiffs (the Mabies) to trial, and the Mabies secured a defense verdict. After the close of evidence in the underlying trial, one of Hyatt's attorneys admitted they had no evidence of fraud or conspiracy at the time they filed the complaint. (*Id.* at p. 586.) Hyatt had also admitted in discovery and at her deposition in the underlying action that she was unaware of any evidence or facts that would support her fraud and conspiracy allegations, and that she had "no idea" whether the malicious prosecution plaintiffs had entered into a conspiracy to harm her. In discovery in the malicious prosecution action, Hyatt admitted that at no time during the underlying action did she become aware of evidence

11

supporting the fraud and conspiracy allegations in her underlying complaint, and in her deposition testified that she never had any facts or information from any source that caused her to believe that the Mabies had done anything fraudulent to her. (*Id.* at pp. 587–588.) Nonetheless, she moved for summary judgment of the malicious prosecution claim on the ground that she had probable cause to bring her fraud and conspiracy claim. The trial court granted her motion, and the malicious prosecution plaintiffs appealed. (*Id.* at p. 589.) The appellate court reversed, finding that in "a situation of complete absence of supporting evidence, it cannot be adjudged reasonable to prosecute a claim." (*Id.* at p. 597.)

This case is not at all like *Mabie*. The record does not demonstrate that Timm ever admitted that he was unaware of any facts or evidence to support his deceptive business practices claim against Bluford. To show lack of probable cause, Bluford relies solely on the trial court's finding in the underlying action that Timm produced no evidence to support his opposition to Bluford's anti-SLAPP motion. However, standing alone, this fact does not necessarily show that Timm's deceptive business practices claim was not legally tenable based on the facts known to him when he filed the underlying action. "[A] claim that appears 'arguably correct' or 'tenable' when filed with the court may nevertheless fail . . . for reasons having to do with the sufficiency of the evidence actually adduced as the litigation unfolds." (*Jarrow, supra*, 31 Cal.4th 728 at pp. 742–743.)

Moreover, in his anti-SLAPP motion that is the basis for this appeal, Timm presented evidence in support of his argument that he had probable cause to bring his deceptive business practices claim, evidence Bluford failed to address in his opening brief. This evidence shows that during the parties' negotiations in 2014, Transworld, a business broker representing Bluford's

12

business, CLP, made misrepresentations in documents it provided to Timm regarding CLP's financial performance. Timm discovered the alleged misrepresentations later that year, so he was aware of those facts at the time he filed the underlying action. Timm contends that the documents at issue, which include a memorandum addressed to "prospective buyer[s]" of CLP, are the type of advertising that supports a cause of action under Business and Professions Code section 17500. Bluford disagrees, arguing for the first time in his reply that private negotiations between two companies cannot constitute false advertising under that section.

Neither party has presented adequate argument on that issue. Timm cites *Lavie v. Proctor & Gamble Co.* (2003) 105 Cal.App.4th 496 for the proposition that a false advertising cause of action need not be based on advertising to the general public. In response, Bluford argues that *Lavie* "leaves no doubt" that such a claim must be based on advertising made to the public or to a subgroup of the public. But *Lavie* (at least the published portion) does not expressly hold one way or the other. The published part of *Lavie* discusses only the standard used to determine whether an advertisement is deceptive under Business and Professions Code section 17500. (*Id.* at pp. 502–513.) There, the court held that an advertisement is " 'likely to deceive' " the consumer where it is "probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." (*Id.* at p. 508.)

Bluford points to *Lavie*'s use of the terms "advertisement" and "consumer" as support for his argument that the sale of CLP's assets to Auburn Capital, Inc. falls outside the scope of Business and Professions Code section 17500. But neither *Lavie* nor that section defines those terms. Bluford also asserts that Business and Professions Code section 17500 does

not apply to the alleged transaction between CLP and Auburn Capital, Inc. because then "every such private business negotiation would become subject to the sweeping remedies of the false advertising statute . . . ." Again, he fails to develop his argument or present supporting legal authority. Our de novo review is limited to issues which have been adequately raised and supported in Bluford's brief, and thus we deem those arguments waived. (See *Reyes v. Kosha* (1998) 65 Cal.App.4th 451, 466, fn. 6.)

Accordingly, Bluford has not shown that there is a "complete absence of supporting evidence" for Timm's deceptive business practices claim. (*Mabie, supra*, 61 Cal.App.4th at p. 597.)[6] He therefore fails to satisfy his burden of showing a probability of prevailing on the probable cause element as to that claim.

Bluford's next argument concerns the rest of Timm's claims in the underlying action. He contends that Timm was not the real party in interest for those causes of action because the assignment from Auburn Capital, Inc. to Timm did not exist when Timm prosecuted the underlying action, a conclusion Bluford infers from Timm's failure to allege the assignment in his underlying complaint and produce it in discovery in the underlying action. We disagree with this premise. It is undisputed that Timm provided his sworn declaration to the trial court in the underlying action stating that Auburn Capital, Inc. assigned its rights to Timm regarding the claims at issue. The assignment is dated in April 2016, well before Timm initiated the

---

[6] In his reply, Bluford states in a single sentence, without more, that "the CLP business . . . was a corporate entity separate from Bluford," and therefore Timm's deceptive business practices claim could only be against CLP, not Bluford. We do not consider this point any further because Bluford does not develop the argument or cite to the record or to authority to support his contention. (See *Reyes v. Kosha, supra*, 65 Cal.App.4th at p. 466, fn. 6.)

14

underlying action. Based on the assignment, the trial court found that Timm was the real party in interest. It only dismissed the matter when Timm failed to timely allege the assignment in the complaint.

Bluford's argument comes down to his assertion that Timm must have backdated the assignment. However, he presents no evidence to support this contention. Timm's failure to allege the assignment in his complaint and to produce the assignment in discovery does not give rise to a reasonable inference that Timm lied to the court and/or submitted a falsified document.

Bluford questions why Timm never explained the assignment's omission in his complaint, why Timm alleged he was the party to the contract instead of Auburn Capital, Inc., and why he did not produce the assignment in discovery. But Bluford has the burden to present evidence showing a lack of probable cause, and his questions amount to speculation.

Bluford also attempts to rely on the sham pleading doctrine, an argument that bears no connection to this appeal. The purpose of the sham pleading doctrine is to prevent an amended pleading " 'when it is apparent that no cause of action can be stated truthfully' "; it " 'is not intended to prevent honest complainants from correcting erroneous allegations or prevent the correction of ambiguous facts.' " (*JPMorgan Chase Bank, N.A. v. Ward* (2019) 33 Cal.App.5th 678, 690.) Bluford merely speculates that any amended pleading Timm could have filed in the underlying action after the court granted him leave to amend would have been a sham. He thus fails to show how the sham pleading doctrine supports his argument that Timm's claims were not legally tenable.

In sum, we conclude that Bluford has not met his burden of showing a probability of prevailing on the element of probable cause. Although we do

15

not need to reach the malice element, we will address the merits of Bluford's arguments regarding that element below.

### 2. *Malice*

The element of malice goes to a defendant's subjective intent in initiating or maintaining the prior action. (*Medley Capital Corp. v. Security National Guaranty, Inc.* (2017) 17 Cal.App.5th 33, 48.) " 'The motive of the defendant must have been something other than that of bringing a perceived guilty person to justice or the satisfaction in a civil action of some personal or financial purpose.' " (*Soukup v. Law Offices of Herbert Hafif, supra*, 39 Cal.4th at p. 292.) Malice " 'may range anywhere from open hostility to indifference.' " (*Ibid.*) However, malice is not limited to ill will. (*Medley Capital Corp. v. Security National Guaranty, Inc., supra*, at p. 48.) It may also be present when proceedings are instituted or maintained primarily for an improper purpose. (*Ibid.*) Accordingly, Bluford's burden is to show that Timm's subjective intent in initiating or maintaining the underlying action was malicious.

Bluford makes several arguments in support of his contention that Timm initiated or prosecuted the underlying action with malice. First, he contends that Timm was put on notice early in the underlying action that he was not the real party in interest by the affirmative defense in Bluford's answer, and that this shows Timm was indifferent because he continued to prosecute the action. But, as we have discussed, Bluford failed to show that Timm was not in fact the assignee of Auburn Capital, Inc. at the time Timm initiated and prosecuted the underlying action.

Next, Bluford argues that malice can be inferred from the fact that Timm never produced any evidence to support his deceptive business practices claim. We find *Jarrow* instructive here. In *Jarrow*, our high court

16

rejected the malicious prosecution plaintiff's argument that it established malice because the defendant presented no competent evidence to support its claim in opposition to the motion for summary judgment in the underlying case.  (*Jarrow*, *supra*, 31 Cal.4th at p. 743.)  The court reasoned " 'Merely because the prior action lacked legal tenability, as measured objectively . . . *without more*, would not logically or reasonably permit the inference that such lack of probable cause was accompanied by the actor's subjective malicious state of mind.' "  (*Ibid.,* citing *Downey Venture v. LMS Ins. Co.* (1998) 66 Cal.App.4th 478, 743.)  This makes sense because otherwise the malice element would be superfluous.  "A lack of probable cause is a factor that may be considered in determining if the claim was prosecuted with malice [citation], but the lack of probable cause must be supplemented by other, additional evidence."  (*HMS Capital, Inc. v. Lawyers Title Co.* (2004) 118 Cal.App.4th 204, 218 (*HMS Capital, Inc.*).)

There is no supplemental evidence here that can support an inference of malice.  Bluford asserts that Timm and Zal (Bluford's father-in-law and attorney) were codefendants in a prior lawsuit where Zal paid the defendants' attorney fees and a settlement, and thus Timm saw Zal as an "easy 'mark' " to "strong-arm" into a settlement.  But the record provides almost no detail about that lawsuit and the settlement.  We do not know, for example, when the settlement occurred and the reasons Zal, and not Timm, paid the settlement.  And there is no evidence of anything to even suggest "strong-arm[ing]" a settlement.  Bluford's contention therefore amounts to speculation.  More is needed to show Timm's subjective state of mind.  In *HMS Capital, Inc.*, for example, the court noted that the malicious prosecution defendant "took no depositions, promulgated only one set of form interrogatories, and refused to dismiss [the underlying action] unless [the

17

plaintiff] paid it $25,000," and it found those facts supported the conclusion that the defendant "was simply trying to squeeze a settlement from [the plaintiff] on a baseless case, and hence evidence of malice." (*HMS Capital, Inc.*, *supra*, 118 Cal.App.4th at p. 218.) There is no similar evidence of Timm's actions during the underlying litigation that suggests he pursued it with the improper motive to settle a baseless claim. To the contrary, the record demonstrates that Bluford and Zal acknowledged the debt defendants owed Timm prior to Timm initiating the underlying action. The only evidence of malice in the record before us pertains to Bluford, not Timm, who brought this malicious prosecution action after threatening to bankrupt Timm and drive his clients away.

Bluford's final argument on the malice element is that Timm filed the deceptive business practices cause of action to pressure Bluford and Zal to pay a settlement because that claim is based on a statute that authorizes an award of attorney fees for the prevailing party. Without evidence of Timm's subjective state of mind, however, this contention lacks merit. To hold otherwise would mean that any action brought pursuant to a statute that authorizes attorney fees would be evidence of malice, regardless of the plaintiff's subjective intent in bringing the claim.[7]

---

[7] In Bluford's opening brief on appeal, he states that one of his arguments in opposition to Timm's anti-SLAPP motion was that Timm brought his deceptive business practices claim against Quicklegal, among other defendants, despite knowing as chair of Quicklegal's board that Quicklegal had never disseminated false advertising to the general public. However, he raises this contention in the "statement of the case" section. We may disregard contentions not raised in a properly headed argument. (*Dinslage v. City and County of San Francisco* (2016) 5 Cal.App.5th 368, 377, fn. 3.) It is not until his reply that he raises this contention as an argument in support of his appeal, and thus he has forfeited this argument. (*Paulus v. Bob Lynch Ford, Inc.* (2006) 139 Cal.App.4th 659, 685.)

We therefore conclude that Bluford did not meet his burden on the element of malice as to Timm for any of the causes of action in the underlying complaint.  Thus, even if Bluford had met his burden on the element of probable cause, the failure to meet his burden on malice is sufficient to affirm the judgment.[8]

## D.    Attorney Fees

The trial court awarded Timm $6,305 in attorney fees after it granted Timm's anti-SLAPP motion.  Although Bluford opposed the anti-SLAPP motion and asked the trial court to deny Timm's request for attorney fees, he

---

[8] Timm contends that Bluford failed to meet his burden of presenting evidence sufficient to establish a likelihood of defeating Timm's affirmative defense of unclean hands, and that he acted upon the advice of his counsel in the underlying action, thus barring Bluford's malicious prosecution action.

Under the " 'unclean hands' " doctrine, a party is barred from relief if he has engaged in any "unconscientious conduct directly related to the transaction or matter before the court." (*Derosa v. Transamerica Title Ins. Co.* (1989) 213 Cal.App.3d 1390, 1395.)  The plaintiff "must come into court with clean hands, and keep them clean, or he will be denied relief, regardless of the merits of his claim." (*Kendall-Jackson Winery, Ltd. v. Superior Court* (1999) 76 Cal.App.4th 970, 978.)  In a malicious prosecution action, the unclean hands conduct must "infect the cause of action involved and affect the equitable relations between the litigants." (*Id.* at p. 984.)

In support of his unclean hands defense, Timm has presented evidence that Bluford pled guilty in federal district court to wire fraud and money laundering, whereby he used CLP's legal services business to defraud people of their money and divert it for his own personal use.  Bluford contends those crimes are insufficiently related to his malicious prosecution action, and that the equities favor him maintaining his action because he agreed to pay the victims of his crimes in a civil action.  We need not address the parties' arguments on the merits of Timm's affirmative defenses of unclean hands or advice of counsel because, as we have discussed above, Bluford has failed to show a probability of prevailing on his malicious prosecution claim.

did not make a specific argument in his opposition brief or at oral argument regarding Timm's entitlement to fees or the amount sought.

Bluford now argues that his malicious prosecution action is a "SLAPPback" action under section 425.18, subdivision (b)(1), and thus Timm was not entitled to attorney fees. Section 425.18, subdivision (b)(1), defines a "SLAPPback" as a malicious prosecution or abuse of process cause of action "arising from" a prior cause of action that was dismissed pursuant to an anti-SLAPP motion. (§ 425.18, subd. (b)(1).) Under section 425.18, subdivision (c), a defendant who successfully files a special motion to strike a SLAPPback action cannot recover attorney fees.

Timm contends that Bluford has forfeited this argument by failing to raise it below. Our review of the record shows Bluford never raised the issue below, nor did he ask the trial court to consider whether his malicious prosecution complaint constituted a SLAPPback action where one cause of action in the underlying complaint was dismissed pursuant to an anti-SLAPP motion and the remainder dismissed on entirely other grounds. Nor has he addressed that issue before us.

We agree that the issue is forfeited. Although Bluford asked the trial court to deny Timm's request for attorney fees, Bluford did not make any specific argument in support of his opposition to Timm's request for attorney fees. He has thus forfeited his contention on appeal. (See *Greenwich S.F., LLC v. Wong* (2010) 190 Cal.App.4th 739, 767.)

## DISPOSITION

The judgment is affirmed. Timm is entitled to his costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)

20

_____
Miller, J.

WE CONCUR:


_____
Richman, Acting P.J.


_____
Mayfield, J.[*]




A160614, *Bluford v. Timm*

---

[*] Judge of the Mendocino Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.